

*Attorneys and Counselors at Law*
556 Peninsula Blvd., Hempstead, New York 11550
Phone: 516-489-6959 • Fax: 516-489-6958 •
www.brewingtonlaw.com

Frederick K. Brewington
Albert D. Manuel III
Leah Jackson

Of Counsel
Oscar Holt III
Jay D. Umans

July 19, 2022

**VIA ELECTRONIC CASE FILING**
Honorable Hector Gonzalez
United States District Court Judge
United States District Court
Eastern District of New York
225 Cadman Plaza, East
Brooklyn, New York 11201

        *Re: Taylor v. Cooper Power & Lighting Corp., et.al.*
        *Docket No.: CV-22-2236 (HG)(SIL)*

Dear Judge Gonzalez:

  We write the Court following our conference on July 15, 2022 to explain the importance of both the Civil Rights statute that gives rise to the instant claim and providing the Court with language which supports the language provided in the Complaint which provides context for the allegations relating to the use of a hangman's noose in our client's workplace. In addressing Defendants' request to file a Fed. R. Civ. P. 12(f) motion, we respectfully incorporate those points raised in our June letter to Your Honor. For the following reasons, Defendants' request should be denied.

  Several Courts have written about the legislation, Congressional effort and public necessity of the line of Civil Rights Acts which were adopted following the ratification of the Thirteenth Amendment to the U.S. Constitution. In may of those cases, the Courts identified the considerations that led to the enactment of 42 U.S.C. §§ 1981 and 1982 also §§ 1983, 1985 and 1986. The Supreme Court in *Jones v. Alfred H. Mayer, Co.,* 392 U.S. 409  88 S.Ct. 2186 (1968) engaged in a careful discussion of the Civil Right Act of 1866 and those Acts that followed in addressing the "badges and incidents of slavery." Justice Stewart, delivering the opinion of the Court provided this insight:

> But the Civil Rights Act was drafted to apply throughout the country, and its language was far broader than would have been necessary to strike down discriminatory statutes.
>
> That broad language, we are asked to believe, was a mere slip of the legislative pen. We disagree. For the same Congress that wanted to do away with the Black Codes also had before it an imposing body of evidence pointing to the mistreatment of Negroes by private individuals and unofficial groups, mistreatment unrelated to any hostile state legislation. "Accounts in newspapers North and South, Freedmen's Bureau and other official documents, private reports and correspondence were all adduced" to show that "private outrage and atrocity" were "daily inflicted on freedmen" The congressional debates are replete with references to private

> injustices against Negroes—references to white employers who refused to pay their Negro workers, white planters who agreed among themselves not to hire freed slaves without the permission of their former masters, white citizens who assaulted Negroes or who combined to drive them out of their communities. [Footnotes omitted] *Id.* 426-427

Justice Stewart recognized that the advocacy which followed the Thirteenth Amendment was of critical significance to who we are and who we would be as a nation. In quoting Senator Trumbull of Illinois, who was the Chairman of the Judiciary Committee, Justice Stewart recounts the Senator's words in defending the constitutionality of the 1866 Act and comments:

> "the trumpet of freedom that we have been blowing throughout the land has given an 'uncertain sound,' and the promised freedom is a delusion. Such was not the intention of Congress, which proposed the constitutional amendment, nor is such the fair meaning of the amendment itself. * * *I have no doubt that under this provision * * * we may destroy all these discriminations in civil rights against the black man; and if we cannot, our constitutional amendment amounts to nothing. It was for that purpose that the second clause of that amendment was adopted, which says that Congress shall have authority, by appropriate legislation, to carry into effect the article prohibiting slavery. Who is to decide what that appropriate legislation is to be? The Congress of the United States; and it is for Congress to adopt such appropriate legislation as it may think proper, so that it be a means to accomplish the end." Surely Senator Trumbull was right. Surely Congress has the power under the Thirteenth Amendment rationally to determine what are the badges and the incidents of slavery, and the authority to translate that determination into effective legislation. *Id.* 440-441

  Defendants would ask this Court to strike historical, sociological and legal information in the Complaint because, in their view, it has no place in this case for damages. However their perspective is too narrow and clearly not accepting of the importance of context of what Mr. Taylor, as an African-American man, would experience. Not only is this information a predicate for future expert reports, but it also serves to provide a clear understanding of why a hangman's noose in a workplace is so offensive. The Defendants are hard pressed to suggest that the information is not related to the underlying claims in this case. Further, the role of the Civil Rights Plaintiff is one that includes not only the advocacy for his/her/their client, but also the use of litigation to bring about societal change. "[W]e reject the notion that a civil rights action for damages constitutes nothing more than a private tort suit benefit[t]ing only the individual plaintiffs whose rights were violated. Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms." *Riverside v. Rivera*, 477 U.S. 561, 574, 106 S.Ct. 2686, 2694, 91 L.Ed.2d 466 (1986).

  Understanding why the information in the complaint, which is now being questioned, is connected to the claims raised by Mr. Taylor, we now turn the Court's attention back to Rule 12(f). The Second Circuit has stated clearly that district courts should be wary when deciding whether to grant a Rule 12(f) motion on the ground that the matter is impertinent and immaterial. *See Lipsky v. Com. United Corp.*, 551 F.2d 887, 893 (2d Cir.1976). However, that is just what the Defendants are seeking from Your Honor. What Defendants are asking the Court to do is tell Plaintiff what to say and what to allege in support of what he believes to be his claims. Allegations that provide

historical and legal context which are focused on defining and on highlighting the central item in this case – a hangman's noose– cannot be suggested to be immaterial. "It is not the job of the Court to micro-manage pleadings and the Second Circuit has stated that 'the courts should not tamper with the pleadings unless there is strong reason for so doing.' " *Sloup v. Loeffler*, No. 05–CV–1766, 2006 WL 767869, at *3 (E.D.N.Y.2006) *(quoting Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir.1976).)

There is no urgent or compelling reason for the Court to even consider the striking of relevant legal citations; relevant historical references; or considered writings relating to the subject matter of the litigation. What is being asked by Defendants is to excise parts of Plaintiff's complaint that stand to support his claim that the complained of conduct: "(1) is objectively severe or pervasive-that is, creates an environment that a reasonable person would find hostile or abusive; [and] (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [race]." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir.2007) (internal quotation marks and ellipses omitted). The references placed in the allegations of the Complaint demonstrate why and how the act of hanging a noose, no less hanging it in a workplace, is severe, threatening and humiliating. Such support is necessary to meet a potential challenge via motion to dismiss for failure to assert necessary objective allegations to prove that Plaintiff has not plead sufficient facts to state a plausible claim. The references objected to by Defendants provide just the type of allegations that make Plaintiff's claim plausible. Accordingly, Defendants bald claims do not demonstrate, as they must, that: "(1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant." *Roe v. City of New York*, 151 F.Supp.2d 495, 510 (S.D.N.Y.2001) (*citing Koch v. Dwyer*, No. 98 Civ. 5519, 2000 WL 1458803, at *1 (S.D.N.Y. Sept. 29, 2000)).

The allegations to which Defendants object serve multiple purposes including those cemented in the advocacy which is fundamental to Civil Rights claims. The fact that the inclusion of citations to legal precedent, social science and historical references assists Plaintiff avoid attacks on his complaint for allegedly not making our a plausible claim or providing information that is objective to meet his pleading obligations cannot be ignored. We ask the Court to allow Plaintiff the opportunity to amend the Complaint to include causes of action under Title VII and New Your State Executive Law as we anticipate the issuance of Administrative Dismissals and a Right to Sue Letter from the New York State Division of Human Rights and the EEOC respectively. Further, Plaintiff seeks permission to amend the Complaint to address and identify the source and connection of the photo of the noose currently existing in the Complaint. Finally, Defendants' request pursuant to Fed. R. Civ. P. 12(f) should be denied as they cannot meet their burden.

Respectfully submitted,<br>
/S/ *Frederick K. Brewington*<br>
FREDERICK K. BREWINGTON

cc: John P. Ruggiero, Esq. (via ecf)
FKB:pl