UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

KYRIN TAYLOR                                    **DOCKET NO.: CV-22-2236** *(HG)(SIL)*

               Plaintiff,

    -against-                                  **SECOND**
                                                **AMENDED**
COOPER POWER & LIGHTING CORP.,                  **COMPLAINT**
MITCH COOPER, DAREN SOBEL, and
AUSTIN RUTELLA,

               Defendants.             ***TRIAL BY JURY DEMANDED***
-------------------------------------------------------------X

     PLAINTIFF, KYRIN TAYLOR, by and through his attorneys THE LAW OFFICES OF

FREDERICK K. BREWINGTON, as and for his Second Amended Complaint against Defendants,

as per stipulation and order of the Court, states and alleges as follows:

### PRELIMINARY STATEMENT

     1.     This is a civil action seeking monetary relief, injunctive relief, declaratory judgment,

compensatory and punitive damages, disbursements, costs, and fees for violations of Plaintiff's

constitutional and statutory rights, brought pursuant to Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e et seq. (as amended), 42 U.S.C §1981, 1985, 1988, New York State Laws, and

Suffolk County Human Rights Law and for retaliation and perpetrating, allowing, encouraging, and

covering-up the unlawful existence of a hostile work environment.

     2.     Specifically, Plaintiff alleges that the Defendants, acting individually and collectively,

did negligently, wantonly, recklessly, intentionally, and knowingly seek to wrongfully deprive

Plaintiff of equal terms and conditions of employment by way of: perpetrating, allowing,

encouraging, condoning, failing to address, and attempting to cover up a hostile work environment

on the basis of race and opposition to discriminatory practices, and by the placing of a hangman's

nooses in full view of Plaintiff and other employees in the workplace with malicious intent and/or

a clear, reckless, and unlawful disregard for the racial animus displayed by such an act. Defendants subsequently retaliated against Plaintiff by, *inter alia*, reprimanding him for reporting the hangman's noose to outside authorities, by refusing to take any meaningful corrective action to address Plaintiff's racially hostile workplace, and by forcing Plaintiff to work directly with the persons responsible for hanging the nooses. Further, Defendants retaliated against Plaintiff by contesting and opposing Plaintiff's application for Worker's Compensation benefits and causing extreme financial and emotional hardship by opposing those benefits.

3.      The acts complained of in the preceding paragraph were committed by Defendants purposefully and with the specific intent to discriminate against Plaintiff based upon his color and race, and in retaliation for his opposing of discriminatory practices and voicing speech of public concern with respect to said discrimination.

4.      Said acts were done knowingly, purposefully, and with the intent to deprive Plaintiff of his right to be free of discrimination in his place of work.

**JURISDICTION AND VENUE**

5.      The jurisdiction of this Court is invoked under 28 U.S.C §§1331 and 1343.

6.      The exercise of pendent jurisdiction by this Court is appropriate in this matter with respect to Plaintiff's state law claims pursuant to 28 U.S.C §1391.

7.      Venue in the Eastern District of New York is proper pursuant to 28 U.S.C §1391, based on the fact that Plaintiff's residence is in the County of Suffolk, and the unlawful employment practices complained of herein occurred in the County of Nassau.

8.      On May 13, 2021, Plaintiff filed a Charge of Discrimination with the New York State Division of Human Rights as Case No. 10212133, which was duly filed with the Equal Employment Opportunity Commission (EEOC), Charge No. 16GC101924, against Defendants COOPER POWER and LIGHTING CORP, MITCH COOPER, DARREN SOBEL, and AUSTIN RUTELLA for violations of the New York State Executive Law Article 15, due to Defendants' racial animus, retaliation, and failure to address his hostile work environment.

9.      On December 3, 2021, after conducting an investigation, the New York State Division of Human Rights reached a Determination that PROBABLE CAUSE exists to believe that the Defendants engaged in unlawful discriminatory practices toward Plaintiff.

10.     Plaintiff has been subjected to additional retaliation by Defendants for filing this Charge of Discrimination, including but not limited to reprimanding Plaintiff, forcing Plaintiff to work closely with his harassers, and constructively discharging Plaintiff from his employment.

11.     On April 22, 2022, the New York State Division of Human Rights issued an *Order of Dismissal for Administrative Convenience,* thereby relinquishing jurisdiction of Plaintiff's Charge of Discrimination.

12.     Plaintiff received a Dismissal and Notice of Rights from the EEOC on August 29, 2022, which was dated August 9, 2022 under EEOC Charge Nos. 16G-2021-01924 which contained a *Notice of Right to Sue* as to Plaintiff's his claims falling under Title VII of the Civil Rights Act of 1964, 42 U.S.C §2000(e) *et seq.* (See Exhibit A) This Dismissal and Notice of Rights letter was provided to Plaintiff after the initial filing of the Complaint and is being added to this action within 90 days of the receipt of that letter.

3

**PARTIES**

13.     Plaintiff KYRIN TAYLOR is an African American male and a citizen of the United States and New York State. At all times relevant, Plaintiff was employed by Defendant COOPER POWER & LIGHTING CORP as an Electrician's Helper and/or Apprentice Electrician. At all times relevant, Plaintiff was the only African American person employed as an Electrician's Helper and/or Apprentice Electrician by Defendant COOPER P&L.

14.     Defendant COOPER POWER & LIGHTING CORP ("COOPER P&L" hereinafter) is a domestic corporation organized under the laws of and operating within New York State, which provides electrical contracting services. At all times relevant, Defendant COOPER P&L maintained a principal place of business at 39 Central Avenue, Farmingdale, New York 11735.

15.     Defendant MITCH COOPER ("COOPER" hereinafter) is a Caucasian male and, upon information and belief, is a citizen of the United States and New York State. At all times relevant, MITCH COOPER was the owner, operator, and sole policymaker of COOPER P&L, and possessed ultimate supervisory authority over Plaintiff and Defendants DARREN SOBEL and AUSTIN RUTELLA. Defendant COOPER was affirmatively aware of the discriminatory and unlawful conduct that Plaintiff was being subjected to by Defendants, and had the authority, power, and capacity to rectify Plaintiff's hostile work environment, but failed to do so.

16.     Defendant DARREN SOBEL ("SOBEL" hereinafter) is a Caucasian male and, upon information and belief, is a citizen of the United States and New York State. At all times relevant, Defendant SOBEL was employed by Defendant COOPER P&L as an Electrician. Defendant SOBEL directly engaged in egregious discriminatory conduct by displaying a hangman's noose with malicious intent and/or reckless disregard for Plaintiff's safety, security, and conditions of

4

employment. These actions were motivated by racial animus in violation of County, State, and Federal laws, rules, and regulations.

17.     Defendant AUSTIN RUTELLA ("RUTELLA" hereinafter) is a Caucasian male and, upon information and belief, is a citizen of the United States and New York State. At all times relevant, Defendant SOBEL was employed by Defendant COOPER P&L as an Apprentice Electrician. Defendant RUTELLA directly engaged in egregious discriminatory conduct by displaying a hangman's noose with malicious intent and/or reckless disregard for Plaintiff's safety, security, and conditions of employment. These actions were motivated by racial animus in violation of County, State, and Federal laws, rules, and regulations.

## FACTUAL ALLEGATIONS

18.     In or around January of 2021, Plaintiff KYRIN TAYLOR was hired by Defendant COOPER P&L as an Electrician's Helper and/or Apprentice Electrician. Plaintiff also joined a union, the International Brotherhood of Electrical Workers (IBEW) Local 25 upon his hire.

19.     Plaintiff enjoyed electrical work and was excited to be hired into a role that would allow him to build experience and, eventually, advance to Journeyman Electrician. For four (4) months, Plaintiff performed all duties assigned to him in an exemplary fashion.

20.     However, Plaintiff was subjected to hostile working conditions during this time by Defendants SOBEL and RUTELLA through offensive remarks, discriminatory acts, and differential treatment compared to his white co-workers.

21.     One such incident occurred in or about February of 2021. Plaintiff had made a delivery of parts and materials as was his assignment. As he was observing work being done by more experienced staff as was encouraged and required for apprentice-level electricians. Suddenly, and

5

without justification, Defendant SOBEL admonished Plaintiff for "standing there without [his] tools doing nothing" and directed him to move a pipe. Plaintiff correctly responded that Defendant SOBEL was not his supervisor and Plaintiff did not take orders from Defendant SOBEL.

22.     Defendant SOBEL mocked Plaintiff, calling him a "tough guy" in response to Plaintiff's perceived defiance. After Plaintiff left the room, upon information and belief, Defendant SOBEL remarked to another co-worker named Anthony "Doe" that "he [Plaintiff] is going to get his payback. Nobody disrespects me."

23.     Plaintiff, who was troubled by this interaction with Defendant SOBEL, reported the incident to Defendant COOPER as the owner and operator of COOPER P&L but Defendant COOPER took no action in response.

24.     On April 20, 2021, at approximately 7:30 a.m., Plaintiff arrived at COOPER P&L to work his scheduled shift. As part of his work tasks Mr. Taylor personally was the one who labeled all of the shelves in the tool room. Mr. Taylor would regularly work along side the warehouse manager Jimmy, and on April 20, 2021 that is exactly what he was doing. Mr. Taylor worked in the warehouse everyday and each day his duties required him to be in and out of the tool room as part of his job and to complete and fulfill his duties.

25.     At approximately 8:00 a.m. Plaintiff entered the Tool Room, as he did every day, and was confronted by one (1) fully tied hangman's noose and one (1) clear attempt at tying a hangman's noose. The nooses were hanging in full view of all employees.   It was immediately obvious to Plaintiff that these hangman's nooses were directed toward him and were intended to threaten and intimidate him.   Mr. Taylor recorded the existence of this hangman's noose in his work place by using his phone. One of the images that he recorded is located below.



26.     When conduct in the workplace, such as hanging a noose, is used and is physically threatening to a Plaintiff such as Mr. Taylor  because of his race, that conduct has created a hostile work environment.

27.     The hangman's noose has a centuries-long history as a symbol of racial hatred and violence toward African American persons in the United States and is widely and universally recognized as such. More recently, the hangman's noose has been frequently utilized by persons with discriminatory and/or violent intent to intimidate African American persons in New York State, particularly on Long Island.  There can be no greater symbols of race hatred and violence than the displaying of the instrument used to lynch thousands of African Americans in our country's undeniable history.

28.     Upon information and belief, Defendants SOBEL and RUTELLA were well aware of the racial connotations of hanging a noose and were aware of prior incidents of nooses being hung on Long Island and elsewhere to threaten and intimidate African American persons, as well as the many news stories reporting such incidents across the country.

29.     Indeed, the hangman's nooses had the intended effect on Plaintiff – as soon as Plaintiff viewed the nooses above his workstation, he was put in immediate fear of racial violence in his place of work.

30.     Plaintiff immediately called the president of his union, Kevin Casey. When Plaintiff was not able to reach Mr. Casey, he called his union representative Tim McCarthy and summoned the Suffolk County Police.

31.     At this time Plaintiff was unaware of who had tied the nooses and was extremely concerned that one or more of his co-workers intended to kill or otherwise inflict severe bodily harm upon him on the basis of his race.

32.     When confronted about this symbol of hate being placed in this workplace, Defendant Mitchell Cooper showed no appreciation for the impact of this particular symbol and the level of fear that such symbol inspired in Mr. Taylor, who was targeted as an African American man.    Mr. Cooper made statements that focused on his concern for the information being told to persons outside of COOPER P&L rather than the fact that his employees engaged in the use of noose as a method of arousing fear in Mr. Taylor.

33.     Unquestionably, the noose is among the most repugnant of all racist symbols, because it is itself an instrument of violence. The impact of the display of a noose is well recognized in our society and is linked to the legacy of violence against African–Americans in the form of public lynchings. There can be no greater symbols of race hatred and violence than the displaying of the

8

instrument used to lynch thousands of African Americans in our country's undeniable history.

34.     Plaintiff was aware of the history of the use of hangman's nooses as an act of terror and threat which was prevalent within the United States and focused against African-Americans and that he as a member of that population was targeted by Defendants SOBEL and RUTELLA and then defended by defendant COOPER.  As a result, Mr. Taylor has been victimized to the level of being made to suffer from Post Traumatic Stress Disorder which has seriously damaged his ability to trust any work environment and resulted in his loss of ability to function as he once had been able to perform.

35.     These concerns were compounded by the fact that the nooses had to have been seen by several other employees of COOPER P&L prior to and subsequent to Plaintiff's arrival at work, but none of these employees had attempted to take down the nooses or even warn Plaintiff of their presence. Plaintiff's co-workers instead left the nooses hanging above this work area for him to encounter upon his arrival to work. Plaintiff took videos and still photographs of the nooses in case they were removed by other employees before the authorities arrived.

36.     Plaintiff was overwhelmed with fear and disgust and waited outside for the Suffolk County Police to arrive. The police arrived at COOPER P&L shortly thereafter and took Plaintiff's statement.

37.     The police then spoke with Defendants COOPER, SOBEL, and RUTELLA. Defendants SOBEL and RUTELLA again admitted to constructing and hanging the nooses.

38.     Following his questioning by the police, Defendant RUTELLA made a last-ditch attempt to further intimidate and threaten Plaintiff. Without reason or justification, Defendant RUTELLA walked in a menacing manner toward Plaintiff and invaded his personal space to such a degree that Plaintiff was forced to step back to avoid physical contact with Defendant RUTELLA.

9

39.     IBEW Local 25 Representative Tim McCarthy arrived at COOPER P&L shortly thereafter. Immediately recognizing the nooses for the symbols of racial hatred and violence that they were, Mr. McCarthy expressed disgust and outrage and engaged Defendant COOPER about them.

40.     In response to Mr. McCarthy's questions, Defendant COOPER admitted that he knew that Defendants SOBEL and RUTELLA had constructed the nooses and hung them in the work area. Defendant COOPER further advised Mr. McCarthy and Plaintiff that there was a security camera set up to record the Tool Room and that Defendants SOBEL and RUTELLA had already admitted to him that they were responsible for hanging the nooses.

41.     Specifically, as Plaintiff stood listening, Defendant COOPER stated to Mr. McCarthy: "It was Darren [Sobel] and Austin [Rutella]. Probably Darren. Austin is going for his apprenticeship and I don't want to mess that up." This comment filled both Plaintiff and Mr. McCarthy with disgust, as it was evident to them that Defendant COOPER was more concerned with the career prospects of the persons trying to threaten and intimidate Plaintiff than with securing a safe work environment free from racial violence for all of his employees.

42.     When confronted with the noose having been explained by someone as a "rig" to do electric, Defendant COOPER admitted the he never used such an item.   A rig in this context is equipment, material or machinery fitted for a specified purpose sometimes used by electricians in the course of their work.

43.     Upon information and belief, there is no variation of a rig regularly employed by professional electricians which in any way resembles a hangman's noose.   When presented with the pretextual excuse given by a worker that the noose was used for doing electrical work, Mr. McCarthy responded "It's wrong. It's f#*king wrong. I've rigged a lot of things in my career, but I never used

10

a fucking noose to do it. I tell that right now!" This statement was not only the experience of Mr. McCarthy but when the statement was made to Defendant Cooper he agreed and stated, "I never used it." To which Mr. McCarthy responded, "Exactly!"

44.     After this conversation between Defendant COOPER and Mr. McCarthy Defendant Cooper then admonished Plaintiff for calling the police, and instructed Plaintiff that he should have called Defendant COOPER to handle this incident instead. Plaintiff, based upon Defendant COOPER's history of inaction regarding Plaintiff's prior concerns about the safety of his work environment responded that he felt threatened and did not feel that Defendant COOPER was there to protect him. Defendant COOPER's nonchalant response to the nooses further confirmed Plaintiff's misgivings. Plaintiff has been subjected to adverse employment actions and as a result has suffered a materially adverse change in the terms and conditions of his employment and ability to enjoy the same benefits of white persons.

45.     Despite his concerns regarding the safety of his workplace, and his growing sense of depression and hopelessness due to Defendant COOPER's inaction, Plaintiff reported to work as usual at 7:00 a.m. on April 21, 2021.

46.     Plaintiff was filled with dismay and disbelief when he noticed that Defendant RUTELLA was also present at work and apparently had not been disciplined in any way by Defendant COOPER. Plaintiff's dismay turned to distress when he was assigned to work with Defendant RUTELLA directly.

47.     It became crystal clear to Plaintiff that Defendant COOPER had no intention whatsoever of rectifying the extremely hostile, racially charged, and dangerous work environment at COOPER P&L. Plaintiff, emotionally distraught, felt that he had no choice but to resign from the job he loved for the sake of his own safety. Plaintiff was not only emotionally scarred, but was

11

effectively constructively discharged from his employment by Defendant COOPER.

48.      Plaintiff experienced and continues to experience extreme emotional distress from

the incident on April 20, 2021, as well as the preceding and subsequent instances of discrimination

and retaliation. Plaintiff continues to have trouble sleeping and suffers from post traumatic stress

disorder, depression and anxiety that he will become the target of racial violence. Plaintiff has been

receiving psychological treatment for his emotional distress since shortly after April 20, 2021.

49.      Plaintiff was constructively discharged from his employment, costing him a stable

and fulfilling career as an electrician and the chance to advance within that career. Plaintiff's future

employment and financial prospects have been gravely damaged by Defendants' discriminatory

actions. Despite the harm caused to Mr. Taylor, Defendants COOPER and COOPER P&L have

contested his claim for Workers Compensation Benefits as further level of refusing to acknowledge

the harm caused by the placement of the hangman's noose in Plaintiff's workplace.


### AS AND FOR A FIRST COUNT
### 42 U.S.C. 1981 (as amended)

50.      Plaintiff repeats and reiterates the allegations set forth in Paragraphs 1-49 of this

of this *Second Amended Complaint*, with the same force and effect as though fully set forth herein.

51.      As an African American man, member of IBEW and an employee of COOPER P&L

Plaintiff was entitled to by law, 42 U.S.C. §1981 as amended by the Civil Rights Restoration Act

of 1991 (Publ. Law No, 102-406), he same and "the full and equal benefit of all laws and

proceedings for the security of persons and property as is enjoyed by white citizens."

52.      As an African American man,  member of IBEW and an employee of COOPER P&L Plaintiff was entitled to by law, 42 U.S.C. §1981 as amended by the Civil Rights Restoration Act of 1991 (Publ. Law No, 102-406),  the same rights and opportunities in the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

53.      As an African American man,  member of IBEW and an employee of COOPER P&L Plaintiff was entitled to by law, 42 U.S.C. §1981 as amended by the Civil Rights Restoration Act of 1991 (Publ. Law No, 102-406), to be "protected against impairment by nongovernmental discrimination."

54.      As an African American man, Plaintiff was subjected to race based animus and acts of bigotry and hatred, including but not limited to the use of a noose.  The hanging of the noose in Plaintiff's place of employment was intended to terrorize, intimidate, abuse and discriminate against him and cause him fear, anguish and torment on account of his race.

55.      Plaintiff was entitled to by law, 42 U.S.C. §1981 as amended by the Civil Rights Restoration Act of 1991 (Publ. Law No, 102-406),  to be free from the above-referenced acts of discrimination and retaliation were undertaken by the Defendants, individually and collectively, which were done with out any regard for the safety, well being or health of Plaintiff and don with the goal of depriving Plaintiff of equal protection and privileges, benefits and opportunities as afforded to similarly situated Caucasian employees.

56.      As a direct result of said acts, Plaintiff has suffered and continues to suffer loss of employment benefits and career opportunities, and suffered and continues to suffer from repeated, severe and permanent psychological and emotional trauma and damage, including distress,

humiliation, embarrassment, fear of serious bodily injury or death, and damage to his professional reputation.

57.    By reason of the foregoing, Plaintiff has suffered and continues to suffer loss of employment benefits and career opportunities, exposure to disgrace and embarrassment, and damage to his professional reputation, and suffered and continues to suffer from repeated, severe and permanent psychological and emotional trauma and damage, including but not limited to distress, humiliation, embarrassment, and fear of serious bodily injury or death and has been damaged in excess of five million ($5,000,000) dollars, including the cost of this action, attorney's fees pursuant to U.S.C. § 1988, and punitive damages.

**AS AND FOR A SECOND COUNT**
**42 U.S.C. §1985 -CONSPIRACY**

58.    Plaintiff repeats and reiterates the allegations set forth in Paragraphs 1-57 of this of this *Second Amended Complaint*, with the same force and effect as though fully set forth herein.

59.    The aforementioned acts, abuses and unlawful conduct, as detailed explicitly above, by Defendants, COOPER and COOPER P&L, SOBEL and RUTELLA violated Plaintiff's rights and violated federal and state anti-discrimination laws, as alleged in the within Complaint.

60.    Each and every Defendant knew or should have known that the actions of the above stated Defendants were in violation of the Plaintiffs' rights to be free from racial discrimination, differential treatment, and abuse regardless of race, and right to a non-hostile work environment, free from retaliation and racially offensive symbols, actions, comments and intimidation.

14

61.     Each of the above Defendants, acting individually and/or collectively, and openly and tacitly agreed with each other to deprive the Plaintiff of his aforesaid rights based on his race and color, and in retaliation for his opposing discrimination, through such acts as described in the factual allegations set forth in the preceding paragraphs.

62.     Defendants acquiesced and contributed to the continuation of the conspiracy to violate Plaintiff's rights in failing to take action as to prevent and expose the discriminatory and violative actions being taken against Plaintiff. None of the Defendants took action to prevent the wrongful actions taken against Plaintiff to discriminate against him and cause his employment to be compromised.

63.     By reason of the foregoing, Plaintiff has suffered and continues to suffer loss of employment benefits and career opportunities, exposure to disgrace and embarrassment, and damage to his professional reputation, and suffered and continues to suffer from repeated, severe and permanent psychological and emotional trauma and damage, including but not limited to distress, humiliation, embarrassment, and fear of serious bodily injury or death and has been damaged in excess of five million ($5,000,000) dollars, including the cost of this action, attorney's fees pursuant to U.S.C. § 1988, and punitive damages.

**AS AND FOR A THIRD COUNT**
**NEGLIGENT HIRE, RETENTION, AND TRAINING**

64.     Plaintiff repeats and reiterates the allegations set forth in Paragraphs 1-63 of this of this *Second Amended Complaint,* with the same force and effect as though fully set forth herein.

65.     Defendant COOPER, as the owner, operator, and ultimate supervisor of all employees at COOPER P&L, was at all times relevant obligated to hire, retain, and train his employees

15

appropriately to ensure a safe, non-discriminatory and non-hostile work environment.

66.     Defendant COOPER and COOPER P&L knew or should have known that Defendants SOBEL and RUTELLA were creating a hostile work environment and were therefore unfit for duty. Plaintiff complained directly to Defendant COOPER about racial harassment that he was receiving from Defendants SOBEL and RUTELLA prior to April 20, 2021, but took no action, disciplinary or otherwise, toward Defendants SOBEL and RUTELLA.

67.     As a direct result of Defendant COOPER's and COOPER P&L  actions and inactions regarding his negligent hire, retention, and/or training of Defendants SOBEL and RUTELLA, Plaintiff was subjected to a hostile work environment on the basis of his race and ultimately subjected to the display of a hangman's noose in his workspace on April 20, 2021.

68.     As a direct result of Defendant COOPER's and COOPER P&L actions and inactions regarding his negligent hire, retention, and/or training of Defendants SOBEL and RUTELLA, Plaintiff was subjected to retaliation and further escalation of the racial hostility he faced at work.

69.     By reason of the foregoing, Plaintiff has suffered and continues to suffer loss of employment benefits and career opportunities, exposure to disgrace and embarrassment, and damage to his professional reputation, and suffered and continues to suffer from repeated, severe and permanent psychological and emotional trauma and damage, including but not limited to distress, humiliation, embarrassment, and fear of serious bodily injury or death and has been damaged in excess of five million ($5,000,000) dollars, including the cost of this action, attorney's fees pursuant to 42 U.S.C. § 1988, and punitive damages.

**AS AND FOR A FOURTH COUNT**
**INTENTIONAL AND/OR NEGLIGENT INFLICTION**
**OF EMOTIONAL DISTRESS**

70.     Plaintiff repeats and reiterates the allegations set forth in Paragraphs 1-69 of this

of this *Second Amended Complaint*, with the same force and effect as though fully set forth herein.

71.     Defendants, COOPER and COOPER P&L, SOBEL and RUTELLA individually and

collectively, through their extreme and outrageous behavior, intentionally, recklessly, and/or

negligently caused Plaintiff severe emotional distress and mental trauma when they subjected

Plaintiff to a hostile and unsafe work environment, displayed and/or allowed hangman's nooses to

be displayed in Plaintiff's workspace, downplayed the severity of this clear and unambiguous symbol

of racial hatred and violence, and retaliated against Plaintiff for speaking out about this incident and

reporting it to outside authorities.

72.     It was foreseeable to all Defendants that their extreme and outrageous behavior

would cause Plaintiff to experience severe emotional distress and mental trauma.

73.     By reason of the foregoing, Plaintiff has suffered and continues to suffer loss of

employment benefits and career opportunities, exposure to disgrace and embarrassment, and damage

to his professional reputation, and suffered and continues to suffer from repeated, severe and

permanent psychological and emotional trauma and damage, including but not limited to distress,

humiliation, embarrassment, and fear of serious bodily injury or death and has been damaged in

excess of five million ($5,000,000) dollars, including the cost of this action, attorney's fees pursuant

to the applicable laws, and punitive damages.

17

## AS AND FOR A FIFTH COUNT
### EXECUTIVE LAW §296

74.     Plaintiff repeats and reiterates the allegations set forth in Paragraphs 1-73 of this

of this *Second Amended Complaint*, with the same force and effect as though fully set forth herein.

75.     Defendants, COOPER and COOPER P&L, SOBEL and RUTELLA individually and

collectively, through their extreme and outrageous behavior, subjected Plaintiff to a hostile work

environment, in violation of New York State law.

76.     During his employment with Defendant, Plaintiff was subjected to a hostile work

environment through offensive remarks, discriminatory acts, and differential treatment compared to

his white co-workers.  Such treatment was solely because of Plaintiff's race.

77.     On April 20, 2021, at approximately 8:00 a.m., upon his arrival at work, Plaintiff –

the only African American employee at Defendant COOPER P&L – entered the Tool Room and was

confronted by two hangman's noose; one (1) fully tied, and one (1) clear attempt at tying a

hangman's noose.

78.     The nooses were hanging in full view of all employees.

79.     It was immediately obvious that these hangman's nooses were directed toward

Plaintiff – the sole African American employee at Defendants' place of business –  and were

intended to threaten and intimidate Plaintiff.

80.     Defendants, COOPER and COOPER P&L, SOBEL and RUTELLA individually and

collectively are aware of the historical meaning of a hangman's noose to an African American.

81.     Upon information and belief, Defendants intended to instill in Plaintiff fear of

immediate harm, including, but not limited to death.

82. It was foreseeable to all Defendants that their extreme and outrageous behavior would cause Plaintiff to experience severe emotional distress and mental trauma.

83. By reason of the foregoing, Plaintiff has suffered and continues to suffer loss of employment benefits and career opportunities, exposure to disgrace and embarrassment, and damage to his professional reputation, and suffered and continues to suffer from repeated, severe and permanent psychological and emotional trauma and damage, including but not limited to distress, humiliation, embarrassment, and fear of serious bodily injury or death and has been damaged in excess of five million ($5,000,000) dollars, including the cost of this action, attorney's fees pursuant to the applicable laws, and punitive damages.

## AS AND FOR THE SIXTH COUNT
### 42 U.S.C. § 2000e (Title VII)

84. Plaintiff repeats and reiterates the allegations set forth in Paragraphs 1-83 of this of this *Second Amended Complaint*, with the same force and effect as though fully set forth herein.

85. The Defendants COOPER and COOPER P&L, SOBEL and RUTELLA individually and collectively and through their agents and employees and by the conduct set forth above, discriminated against the Plaintiff in his employment, vis-a-vis unequal terms and conditions and unequal treatment, based on Plaintiff's race (African-American), color, and in retaliation for his opposing such discriminatory practices, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended. COOPER and COOPER P&L, SOBEL and RUTELLA individually and collectively and through their agents and employees and by the conduct set forth above have harassed, intimidated, and retaliated against Plaintiff, in violation of Title VII for opposing

discriminatory practices, which include but is not limited to, Plaintiff's filing of EEO Complaints, grievances, SDHR and EEOC Complaints and the instant Federal Complaint.

86.     As a direct result of said Defendants' acts, Plaintiff has suffered and continues to suffer loss of status, opportunities, diminished employment, loss of income, loss of other employment benefits and has suffered and continues to suffer distress, humiliation, embarrassment, psychological trauma requiring counseling, great financial expense and damage to his reputation.

87.     By reason of the foregoing, Plaintiff has suffered and continues to suffer loss of employment benefits and career opportunities, exposure to disgrace and embarrassment, and damage to his professional reputation, and suffered and continues to suffer from repeated, severe and permanent psychological and emotional trauma and damage, including but not limited to distress, humiliation, embarrassment, and fear of serious bodily injury or death and has been damaged in excess of maximum monetary damages and penalties available by law, as well as costs and attorneys fees.

## AS AND FOR A SEVENTH COUNT
### SUFFOLK COUNTY HUMAN RIGHTS LAW § 528-7

88.     Plaintiff repeats and reiterates the allegations set forth in Paragraphs 1-87 of this of this *Second Amended Complaint*, with the same force and effect as though fully set forth herein..

89.     The Suffolk County Human Rights Law §528-7 governs and outlaws unlawful discriminatory practices in employment.

90.     On April 21, 2021, Plaintiff Kyrin Taylor sought to report to work, perform his duties and engage in the employment he had hope to develop into a profession. Defendants did wrongfully deprive Plaintiff of equal terms and conditions of employment by way of: perpetrating, allowing,

encouraging, condoning, failing to address, and attempting to cover up a hostile work environment on the basis of race and opposition to discriminatory practices, and by the placing of a hangman's nooses in full view of Plaintiff and other employees in the workplace with malicious intent and/or a clear, reckless, and unlawful disregard for the racial animus displayed by such an act. Defendants subsequently retaliated against Plaintiff by, *inter alia*, reprimanding him for reporting the hangman's noose to outside authorities, by refusing to take any meaningful corrective action to address Plaintiff's racially hostile workplace, and by forcing Plaintiff to work directly with the persons responsible for hanging the nooses. Further, Defendants retaliated against Plaintiff by contesting and opposing Plaintiff's application for Worker's Compensation benefits and causing extreme financial and emotional hardship by opposing those benefits. On multiple levels Plaintiff was denied equal terms as was afforded white persons. All of these rights are secured to Plaintiff under The Suffolk County Human Rights Law § 528-7.

91.     By reason of the foregoing, Plaintiff has suffered and continues to suffer loss of employment benefits and career opportunities, exposure to disgrace and embarrassment, and damage to his professional reputation, and suffered and continues to suffer from repeated, severe and permanent psychological and emotional trauma and damage, including but not limited to distress, humiliation, embarrassment, and fear of serious bodily injury or death and has been damaged in excess of five million ($5,000,000) dollars, including the cost of this action, attorney's fees pursuant to the applicable laws, and punitive damages.

## **PRAYER FOR RELIEF**

Plaintiff requests judgment as follows:

a.     On the First Count in the sum in excess of five million ($5,000,000) dollars.

21

b.      On the Second Count in the sum in excess of five million ($5,000,000) dollars.

c.      On the Third Count in the sum in excess of five million ($5,000,000) dollars.

d.      On the Fourth Count in the sum in excess of five million ($5,000,000) dollars.

e.      On the Fifth Count in the sum in excess of five million ($5,000,000) dollars.

f.      On the Sixth Count in the sum in excess of five million ($5,000,000) dollars.

g.      On the Seventh Count in the sum in excess of five million ($5,000,000) dollars.

h.      A declaratory judgment stating that Defendants willfully violated Plaintiff's rights secured by federal and state laws as alleged herein;

i.      Injunctive relief requiring Defendants to correct all past violations of federal and state law as alleged herein; to enjoin Defendants from continuing to violate federal and state law as alleged herein; and to order such other injunctive relief as may be appropriate to prevent any future violations of said federal and state laws;

j.      Award costs of this action including attorney's fees to the Plaintiff pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 2000e 5(k) and any and all applicable attorney's fees and costs as imposed by state law; and

k.      An Order granting such other legal and equitable relief as this Court deems just and proper.

## PLAINTIFF DEMANDS A TRIAL BY JURY

Dated: Hempstead, New York
       September 23, 2022                    LAW OFFICES OF
                                            FREDERICK K. BREWINGTON

                               By:    /s/ Frederick K. Brewington
                                            FREDERICK K. BREWINGTON
                                            *Attorneys for Plaintiff*
                                            556 Peninsula Boulevard
                                            Hempstead, New York 11550
                                            (516) 489-6959

22

# EXHIBIT A

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**New York District Office**
33 Whitehall St, 5th Floor
New York, NY 10004
(929) 506-5270
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 08/09/2022

**To:** Kyrin Taylor
504 Tudor Lane
Middle Island, NY 11953
Charge No: 16G-2021-01924

EEOC Representative and email:     Holly Shabazz
S/L Tribal Program Manager
holly.shabazz@eeoc.gov

---

### DISMISSAL OF CHARGE

The EEOC is closing this charge because: Charging Party wishes to pursue matter in Federal District Court..

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By:Timothy Riera
08/29/2022
_____
Timothy Riera
Acting District Director