UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
KYRIN TAYLOR,

                              Plaintiff,

     -against-

COOPER POWER & LIGHTING, MITCH COOPER, DAREN SOBEL, and AUSTIN RUTELLA,

                             Defendants.
----------------------------------------------------------------x

**REPORT AND RECOMMENDATION**
22-cv-2236 (HG)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court in this employment discrimination action, on referral from the Honorable Hector Gonzalez for Report and Recommendation, are: (1) Plaintiff Kyrin Taylor's ("Plaintiff" or "Taylor") motion for default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") against Defendant Daren Sobel ("Sobel"), *see* Plaintiff's Motion for Default Judgment ("Sobel Motion" or "Sobel Mot."), Docket Entry ("DE") [52], and (2) Plaintiff's motion for default judgment pursuant to Fed. R. Civ. P. 55 against Defendant Austin Rutella ("Rutella," or together with Sobel, the "Defaulting Defendants"), *see* Plaintiff's Motion for Default Judgment ("Rutella Motion" or "Rutella Mot.," or together with the Sobel Motion, "Plaintiff's Motions"), DE [51].

By way of Complaint dated April 19, 2022, modified by an Amended Complaint dated August 4, 2022, and a Second Amended Complaint dated September 28, 2022, Plaintiff commenced this action against Defendants Cooper Power & Lighting Corp. ("CPL"), Mitch Cooper ("Cooper") and the Defaulting Defendants (together with CPL

and Cooper, "Defendants") alleging that Defendants subjected Taylor to race discrimination over the course of his employment with CPL. *See* Complaint, DE [1]; Amended Complaint, DE [14]; Second Amended Complaint ("SAC"), DE [23]. Plaintiff asserts causes of action for: (1) race discrimination and retaliation pursuant to 42 U.S.C. § 1981, (2) conspiracy pursuant to 42 U.S.C. § 1985, (3) race discrimination and retaliation pursuant to 41 U.S.C. § 2000e ("Title VII"), (4) hostile work environment pursuant to N.Y. Executive Law § 296 (the "New York State Human Rights Law" or "NYSHRL"), (5) hostile work environment pursuant to Suffolk County Human Rights Law § 528-7 ("SCHRL"), (6) negligent hiring, retention and training, and (7) intentional and/or negligent infliction of emotional distress. *See* SAC. For the reasons set forth herein, the Court respectfully recommends that Plaintiffs' Motions be granted with respect to his § 1981 race discrimination, NYSHRL hostile work environment and § 1985 conspiracy claims, but denied with respect to all other causes of action, and that Taylor be granted leave to submit proof of his damages.

## I.    BACKGROUND

### A. <u>Facts</u>

All relevant facts are taken from the Second Amended Complaint and are accepted as true for the purposes of the present motion.[1] Plaintiff Taylor is an individual and a New York resident. SAC ¶ 13. Defendant CPL is a New York

---

[1] The Court notes that Plaintiff did not submit an affidavit from Taylor, a memorandum of law, or any other evidence underlying his claims, apart from affirmations by Plaintiff's counsel regarding service of process on the Defaulting Defendants. *See* Affirmation of Frederick K. Brewington in Support of Rutella Mot., DE [51]; Affirmation of Frederick K. Brewington in Support of Sobel Mot., DE [52].

corporation with a principal place of business in Farmingdale, New York. *Id.* at ¶ 14. Defendant Cooper is an individual residing in New York and the owner of CPL. *Id.* at ¶ 15. Defaulting Defendants Sobel and Rutella are New York residents and were employees of CPL during the events at issue. *Id.* at ¶¶ 16-17.

In or around January 2021, CPL hired Taylor as an "Electrician's Helper and/or Apprentice Electrician." *Id.* at ¶ 18. Upon his hiring, Plaintiff also joined a union, specifically the International Brotherhood of Electrical Workers Local 25. *Id.* Taylor was employed by CPL for approximately four months. *See id.* at ¶ 19. During the events at issue, Plaintiff was the only African American person employed as an Electrician's Helper or Apprentice Electrician at CPL. *See id.* at ¶ 13. Throughout Taylor's employment he was subject to "offensive remarks, discriminatory acts, and differential treatment compared to his white co-workers," although he does not specify any such instances, other than those set forth below. *Id.* at ¶ 20.

In or about February 2021, Taylor was observing more experienced members of CPL's staff in the course of their work, as was encouraged and required for apprentice-level electricians. *Id.* at ¶ 21. Sobel admonished Plaintiff for "standing there without [his] tools doing nothing" and instructed him to move a pipe. *Id.* Taylor responded that he did not take orders from Sobel, as he was not his supervisor. *See id.* at ¶ 21. In response, Sobel mocked Plaintiff and called him a "tough guy," and when Taylor left the room Sobel told another employee identified as Anthony Doe that he would "get his payback" and that "[n]obody disrespects [Sobel]." *Id.* at ¶ 22. Plaintiff reported this incident to Cooper, who took no action in response. *Id.* at ¶ 23.

Over the course of his employment, Taylor regularly worked in the "tool room" on the CPL premises. *See id.* at ¶ 24. On April 20, 2021, at approximately 8:00 a.m., Plaintiff entered the tool room and saw a hangman's noose and a second partially tied noose, hanging in full view of all employees. *Id.* at ¶ 25. Taylor took a photo of the nooses with his cell phone. *See id.* Plaintiff understood that the nooses were directed towards him and were intended to threaten and intimidate him. *Id.* According to Plaintiff, Sobel and Rutella were aware of the racial connotations of hanging a noose as a means of threatening and intimidating African American people. *See id.* at ¶ 28.

Taylor, concerned that one or more of his co-workers intended to harm or kill him based on his race, contacted the president of his union, Kevin Casey, and his union representative, Tim McCarthy ("McCarthy"). *See id.* at ¶¶ 30-31. Plaintiff then called the Suffolk County Police and waited outside the premises for them to arrive. *See id.* at ¶¶ 36, 44. The police interviewed Plaintiff, Cooper, Sobel and Rutella upon their arrival. *See id.* at ¶¶ 36-37. Sobel and Rutella admitted to constructing and hanging the nooses. *Id.* at ¶ 37. After his police interview, Rutella walked towards Taylor in a menacing manner and entered Plaintiff's personal space, forcing Taylor to step back to avoid physical contact with Rutella. *See id.* at ¶ 38.

Shortly thereafter, McCarthy arrived at CPL and spoke with Cooper, who informed McCarthy that Sobel and Rutella admitted to constructing and hanging the nooses and that there was a security camera in the tool room. *Id.* at ¶¶ 39-40. Plaintiff overheard Cooper tell McCarthy that, "Austin [Rutella] is going for his apprenticeship and I don't want to mess that up." *Id.* at ¶ 41. Cooper also admitted

4

that the nooses could not be explained as any equipment used in the course of electrical work. *See id.* at ¶¶ 42-43. Later, Cooper admonished Taylor for calling the police, rather than contacting Cooper to handle the incident first. *Id.* at ¶ 44.

Plaintiff reported to work the following day, where he was assigned to work directly with Rutella. *Id.* at ¶¶ 45-46. Given that Cooper had no intention of rectifying the situation, Taylor was forced to resign from his position at CPL, *see id.* at ¶ 47, although the date of his resignation is not stated in the Second Amended Complaint. Plaintiff asserts that he was constructively discharged from his employment, damaging his future employment and financial prospects. *Id.* at ¶ 49. CPL and Cooper also contested Taylor's claim for workers compensation benefits. *See id.* As a result of the April 20, 2021 incident, Plaintiff developed sleep problems, post-traumatic stress disorder, depression and anxiety, for which he received psychological treatment. *See id.* at ¶ 48.

On May 13, 2021, Taylor filed a charge of discrimination with the New York State Division of Human Rights ("NYSDHR"), which was duly cross-filed with the Equal Employment Opportunity Commission ("EEOC"). *Id.* at ¶ 8. The NYSDHR determined on December 3, 2021 that probable cause existed to believe that Defendants engaged in unlawful discriminatory practices toward Plaintiff. *Id.* at ¶ 9. On April 22, 2022, the EEOC issued a right to sue letter concerning Taylor's charge. *See id.* at ¶ 12.

### B. **Procedural History**

Plaintiff commenced this action against Defendants on April 19, 2022, and thereafter filed an Amended Complaint on August 4, 2022 and a Second Amended Complaint on September 28, 2022. *See* Complaint, DE [1]; Amended Complaint, DE [14]; SAC. Taylor alleges that Defendants discriminated against him on the basis of his race, asserting claims for: (1) race discrimination and retaliation pursuant to 42 U.S.C. § 1981, (2) conspiracy pursuant to 42 U.S.C. § 1985, (3) race discrimination and retaliation under Title VII, (4) hostile work environment pursuant to NYSHRL, (5) hostile work environment pursuant to SCHRL, (6) negligent hiring, retention and training, and (7) intentional and/or negligent infliction of emotional distress. *See* SAC. Plaintiff seeks $5,000,000 in damages on each cause of action in the Second Amended Complaint, as well as declaratory and injunctive relief and attorney's fees and costs. *See id.*

Defendants were served with the Complaint on May 5, 2022. *See* DE [5]. On June 1, 2022, counsel appeared on behalf of CPL and Cooper and discovery commenced thereafter. *See* Notice of Appearance, DE [6]; Minute Order dated September 22, 2022, DE [19]. With leave of the Court, Taylor filed the Amended Complaint on August 4, 2022 and the Second Amended Complaint on September 28, 2022. *See* Amended Complaint, DE [14]; SAC. Rutella and Sobel were served with the Second Amended Complaint on December 10, 2022 and December 21, 2022 respectively. *See* DEs [29] – [30]. After the deadline for Rutella and Sobel to answer

had expired, Plaintiff requested that the Court issue certificates of default against them, which the Clerk of Court did on January 24, 2023. *See* DEs [35] – [36].

On January 16, 2024, Taylor informed the Court that he had reached a settlement with CPL and Cooper, and Judge Gonzalez dismissed both parties from this action on January 22, 2024. *See* DEs [48] – [49]; Order Dismissing Parties dated Jan. 22, 2024. Plaintiff filed Plaintiff's Motions, seeking default judgments against the Defaulting Defendants, on January 24, 2024. *See* Sobel Mot.; Rutella Mot. Judge Gonzalez referred the motions to this Court the next day for Report and Recommendation. *See* Order Referring Motions dated Jan. 25, 2024. For the reasons set forth below, the Court respectfully recommends that Plaintiffs' Motions be granted with respect to his § 1981 race discrimination, NYSHRL hostile work environment and § 1985 conspiracy claims but denied with respect to all other causes of action, and that Taylor be granted leave to submit proof of his damages.

## II.    LEGAL STANDARD

Motions for default judgment are governed by Fed. R. Civ. P. 55, which provides for a two-step process. *See* Fed. R. Civ. P. 55; *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504-05 (2d Cir. 2011). Initially, the moving party must obtain a certificate of default from the Clerk of the Court. *See* Fed. R. Civ. P. 55(a). Once the certificate of default is issued, the moving party may apply for entry of a default judgment. *See id.* at 55(b). Where a default occurs, the well-pleaded factual allegations set forth in a complaint relating to liability are deemed true. *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004); *see* Fed. R.

Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied."). However, the entry of a default judgment is "entrusted to the sound judicial discretion of the court," and a party is not entitled to a default judgment as a matter of right. *Allstate Ins. Co. v. Howell*, No. 09-cv-4660, 2013 WL 5447152, at *1 (E.D.N.Y. Sept. 30, 2013) (citation omitted).

A plaintiff seeking a default judgment must demonstrate that its "uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012). In determining whether to grant a motion for default judgment, the court has the "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." *Ferrera v. Tire Shop Ctr.*, No. 14-cv-4657, 2015 WL 3562624, at *2 (E.D.N.Y. Apr. 6, 2015), *report and recommendation adopted*, No. 14-cv-4657, 2015 WL 3604078 (E.D.N.Y. Jun. 5, 2015) (internal quotation marks and citation omitted). Accordingly, prior to entering a default judgment, the court must determine whether the plaintiff's allegations establish the defendant's liability "as a matter of law." *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 187 (2d Cir. 2015). Once liability has been established, "[t]he court must also determine the amount of damages, actual or statutory, that may be assessed." *Lyons P'ship, L.P. v. D & L Amusement & Entm't, Inc.*, 702 F. Supp. 2d 104, 111 (E.D.N.Y. 2010).

8

## III.    DISCUSSION

Plaintiff seeks a default judgment against Sobel and Rutella on each claim asserted in the Second Amended Complaint. *See* Sobel Mot.; Rutella Mot. Taylor does not submit evidence of his alleged damages, instead requesting that the Court "set the matter down for submission of proofs as to damages, costs and fees." Sobel Mot. at 3; Rutella Mot. at 3. The record reflects that the Defaulting Defendants were served with the Complaint and the Second Amended Complaint. *See* DEs [5], [29] – [30]. Moreover, the time for Sobel and Rutella to answer the Second Amended Complaint has expired, and the Clerk of Court has issued certificates of defaults against them. *See* DEs [35] – [36]. As a result, the Court must determine whether the allegations of the Second Amended Complaint establish the Defaulting Defendants' liability as a matter of law. For the reasons set forth below, the Court concludes that Plaintiff has established liability against Sobel and Rutella as to his § 1981 race discrimination, NYSHRL hostile work environment and § 1985 conspiracy claims. Accordingly, the Court respectfully recommends that Plaintiffs' Motions be granted with respect to those causes of action, but denied with respect to all other claims, and that Taylor be granted leave to submit proof of his damages.

### A. **Sobel's and Rutella's Liability**

#### 1.    Counts One, Five and Six – § 1981, Title VII and NYSHRL[2]

Plaintiff asserts claims against Sobel and Rutella for: (1) race discrimination and retaliation under 42 U.S.C. § 1981, (2) race discrimination and retaliation

---

[2] The Court refers to each cause of action as it is labeled in the Second Amended Complaint. The claims are addressed out of order to better facilitate analysis.

9

pursuant to Title VII and (3) hostile work environment under NYSHRL.  *See* SAC ¶¶ 50-57, 84-87.  Discrimination claims brought under Title VII, § 1981 and NYSHRL are all analyzed under the same standard.  *See Parra v. City of White Plains,* 48 F. Supp. 3d 542, 553 (S.D.N.Y. 2014).  Title VII, however, "does not provide for individual liability."  *Paupaw-Myrie v. Mount Vernon City Sch. Dist.*, 653 F. Supp. 3d 80, 94 (S.D.N.Y. 2023) (citing *Patterson v. Cty of Oneida*, 375 F.3d 206, 221 (2d Cir. 2014)).  As a result, Plaintiff cannot establish a Title VII claim against the Defaulting Defendants as a matter of law.  *See Paupaw-Myrie,* 653 F. Supp. 3d at 94 (dismissing Title VII claim against individual defendants).  Accordingly, the Court respectfully recommends that Plaintiff's Motions be denied as to Taylor's Title VII claims, Count Six.  The Court next evaluates Plaintiff's § 1981 and NYSHRL claims.

### a.  Count One – § 1981 Race Discrimination and Retaliation

Taylor asserts claims under § 1981 for both race discrimination and retaliation. *See* SAC ¶¶ 50-57.  The Court considers each claim in turn.

### i.  Race Discrimination

To state a claim for race discrimination under § 1981, Plaintiff must establish that:  "(1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered from an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination."  *Mazyck v. Metro. Transp. Auth.*, 893 F. Supp. 2d 574, 587 (S.D.N.Y. 2012) (citing *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008)).  A constructive discharge is "functionally the same as an actual termination" and is therefore

considered an adverse employment action. *Pennsylvania State Police v. Suders,* 542 U.S. 129, 148, 124 S. Ct. 2342, 2355 (2004). To establish a constructive discharge, a plaintiff must show that the employer "intentionally create[d] a work atmosphere so intolerable that [the employee] is forced to quit involuntarily." *Terry v. Ashcroft,* 336 F.3d 128, 151-52 (2d Cir. 2003). Courts in this Circuit have suggested that the level of conduct sufficient to demonstrate a constructive discharge is similar to that required to show a hostile work environment. *See e.g., Whidbee v. Garzarelli Food Specialties Inc.,* 223 F.3d 62, 73-74 (2d Cir. 2000). Moreover, "harassment so intolerable as to cause a resignation may be effected through co-worker conduct." *Pennsylvania State Police,* 542 U.S. at 148, 124 S. Ct. at 2355.

The display of a noose "is among the most repugnant of all racist symbols, because it is itself an instrument of violence." *Williams v. New York City Housing Authority,* 154 F. Supp. 2d 820, 824 (S.D.N.Y. 2001). Nonetheless, some courts in this Circuit have concluded that the presence of a noose in the workplace is insufficient to support a constructive discharge claim. *See e.g., Brown v. Orange & Rockland Utilities, Inc.,* 594 F. Supp. 2d 382, 392-93 (S.D.N.Y. 2009) (granting defendant's motion for summary judgment on constructive discharge claim where noose was removed by management); *see Mays v. Town of Hempstead,* 2012 WL 5866230, at *7 (E.D.N.Y. Nov. 16, 2012) (a single noose, removed shortly after its discovery, was insufficient to create a hostile work environment); *McCoy v. City of New York,* 131 F. Supp. 2d 363, 374 (E.D.N.Y. 2001) (concluding the display of a noose and a racially offensive advertisement did not transform workplace into a hostile work

11

environment). Other New York federal courts, however, applying the similar hostile work environment standard, have determined that the limited display of a noose can be sufficient to establish a claim. *See e.g., Smith v. Town of Hempstead Dept. of Sanitation Sanitary Dist. No. 2*, 798 F. Supp. 2d 443, 453 (E.D.N.Y. 2011) (finding a single display of a noose created an issue of material fact as to whether a hostile work environment existed); *Wilson v. New York City Dep't of Transp.,* No. 01-cv-7398, 2005 WL 2385866, at * 21-22 (S.D.N.Y. Sept. 28, 2005) (denying defendants' motion for summary judgment where repeated use of offensive nicknames was coupled with display of a noose); *Williams,* 154 F. Supp. 2d at 826 (finding issue of material fact as to whether the display of a noose by a supervisor for three days amounted to a hostile work environment).

Here, Taylor is a member of a protected class, *i.e.*, he is African American. SAC ¶ 13. Plaintiff was hired as an apprentice electrician and there is nothing to suggest he was not qualified for that position. *Id*. at ¶ 18. As such, the first two elements of a race discrimination claim have been met.

Taylor also asserts that he suffered an adverse employment action, *i.e.,* a constructive discharge, when he was forced to resign his position after Sobel and Rutella constructed two nooses and left them on display in his workspace in April 2021. *See id.* at ¶¶ 47-49. After Rutella was questioned by the police, Rutella approached Taylor "in a menacing manner" and entered Plaintiff's personal space. *Id*. at ¶ 38. Further, the following day, Plaintiff was assigned to work directly with Rutella. *See id.* at ¶ 46. Given these circumstances, the Court concludes that the

Defaulitng Defendants' conduct was sufficiently severe to create an environment so intolerable that Taylor was forced to resign from CPL.  In so concluding, the Court is persuaded by the courts in this Circuit that have found the display of a noose to be sufficient to create a hostile work environment.  Although the nooses were on display for a limited time, given the violent nature of the symbol, it is reasonable for Plaintiff to have viewed them as a physical threat.  *See Smith,* 798 F. Supp. 2d at 453 (concluding that a noose visible to all African American employees – even when displayed for a short time – was legitimately threatening).  Moreover, while Plaintiff's claim arises from an isolated incident, the severity of the conduct at issue leads to the conclusion that Taylor was constructively discharged.  *See Williams*, 154 F. Supp. 2d at 825-26 (noting that physically threatening actions, such as the display of a noose, are the most egregious form of workplace harassment).  Therefore, the Court concludes that Plaintiff suffered an adverse employment action.

Lastly, given the history of the noose as a symbol of racial violence, Sobel's and Rutella's admitted use of that imagery to intimidate Taylor gives rise to an inference of discrimination on the basis of his race.  *See Williams,* 154 F. Supp. 2d at 824 (citing sociological research regarding the impact of nooses and lynching on African Americans).  Accordingly, Plaintiff has established each element of a § 1981 race discrimination claim as a matter of law, and the Court recommends Plaintiffs' Motion be granted as to this cause of action.

ii.  <u>Retaliation</u>

To establish a *prima facie* retaliation claim, a plaintiff must show: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (internal quotation marks and citation omitted). Here, Taylor complained about the noose incident to both his union representatives and the police. *See* SAC ¶¶ 30, 36. Even assuming this constitutes protected activity, Plaintiff fails to show that Sobel or Rutella took an adverse employment action against him that is causally connected to this reporting. As a result, Taylor has failed to establish a retaliation claim as a matter of law. Accordingly, the Court recommends that Plaintiff's Motions be denied with respect to Taylor's § 1981 retaliation claim.

b. *Count Five – NYSHRL Hostile Work Environment*

Plaintiff further asserts a hostile work environment claim pursuant to NYSHRL. *See* SAC ¶¶ 74-83. To establish a hostile work environment claim under NYSHRL, a plaintiff must show that the complained of conduct: "'(1) [is] objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's protected status.'" *Kugel v. Queens Nassau Nursing Home Inc.*, 568 F. Supp. 3d 253, 262–63 (E.D.N.Y. 2021) (quoting *Patane v. Clark,* 508 F.3d 106, 113 (2d Cir. 2007)). Moreover, an individual may be held liable under NYSHRL if he or she

14

"actually participates in the conduct giving rise to a discrimination claim." *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1308 (2d Cir. 1995) (abrogated on other grounds).   "'As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004) (quoting *Alfano v. Costello,* 294 F.3d 365, 374 (2d Cir. 2002)) (internal quotation marks omitted).   That being said, a single act can create a hostile work environment if the act transforms the plaintiff's workplace.   *See Feingold*, 366 F.3d at 150 (citing *Alfano,* 294 F.3d at 374).

Here, as noted above, the Defaulting Defendants intentionally hung two nooses in Plaintiff's workspace, *see* SAC ¶¶ 25-28, 37, and courts in this Circuit have found that the use of this symbol of racial violence is sufficient to constitute a hostile work environment.   *See* Sec. I.A.1.a.i, *supra* (collecting cases finding a display of a noose created a hostile work environment).   Moreover, although the record includes no other specific instances of racially hostile conduct, Rutella also attempted to intimidate Plaintiff by entering his personal space.   *See* SAC ¶ 38.   In this context, the Court concludes that the display of the nooses coupled with the physical threat was sufficient to transform Taylor's workplace such that a hostile work environment existed.   *See Smith*, 798 F. Supp. 2d at 453 (denying defendants' motion for summary judgment on hostile work environment claim where a noose was displayed for one day).   Accordingly, the Court recommends that Plaintiff's Motions be granted with respect to his NYSHRL hostile work environment claim.

2.  Count Two – 42 U.S.C. § 1985 Conspiracy

Plaintiff further claims that Defendants – including Sobel and Rutella – conspired to violate his rights pursuant to 42 U.S.C. § 1985(3).  *See* SAC ¶¶ 58-63. To establish a conspiracy claim under § 1985(3), a plaintiff must show:  "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States."  *United Bhd. of Carpenters v. Scott*, 463 U.S. 825, 828–29, 103 S. Ct. 3352, 3356 (1983); *see Finn v. Anderson*, 592 F. App'x 16, 20 (2d Cir.2014) (quoting *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999)) (same).

A conspiracy "need not be shown by proof of an explicit agreement but can be established by showing that the 'parties have a tacit understanding to carry out the prohibited conduct.'"  *LeBlanc–Sternberg v. Fletcher*, 67 F.3d 412, 427 (2d Cir. 1995) (quoting *United States v. Rubin*, 844 F.2d 979, 984 (2d Cir. 1988)).  A plaintiff must, however, provide "some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (internal quotation and citation omitted).  A claim of a conspiracy to violate civil rights requires a detailed fact pleading, *see Angola v. Civiletti*, 666 F.2d 1, 4 (2d Cir. 1981), and Plaintiff must show "with at least some degree of particularity, overt acts which the defendants engaged in which were reasonably related to the promotion of the claimed conspiracy."

*Simpson ex rel. Simpson v. Uniondale Union Free Sch. Dist.*, 702 F. Supp. 2d 122, 133 (E.D.N.Y. 2010) (quoting *Thomas*, 165 F.3d at 146).  In addition, a § 1985(3) claim "requires that 'there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'"  *Turkmen v. Hasty*, 789 F.3d 218, 262 (2d Cir. 2015) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S. Ct. 1790, 1798 (1971)).

Here, the Defaulting Defendants admitted to both Cooper and the police that they constructed and displayed the nooses for Plaintiff to view.  *See* SAC ¶ 37.  Sobel and Rutella were also aware of the noose's history as a symbol of violence and intimidation towards African American people.  *See id.* at ¶ 28.  Given that Sobel and Rutella acted together, there is evidence of a tacit agreement between them to discriminate against Taylor.  *See Stein v. Janos,* 269 F. Supp. 2d 356, 262 (S.D.N.Y. 2003 (denying defendants' motion for summary judgment where evidence showed defendants acted together to retaliate against plaintiff).  Plaintiff has also established that Sobel and Rutella engaged in an overt act in furtherance of the conspiracy, *i.e.,* the display of the nooses in the tool room at CPL.  *See Simpson,* 702 F. Supp. 2d at 133.  Moreover, given the significance of the noose as a racially hostile image, the Court can infer racial animus behind the Defaulting Defendants' actions.  *See Turkmen,* 789 F.3d at 262.  Lastly, Taylor was injured as a result of the conspirators' conduct, having developed sleep problems, post-traumatic stress disorder and depression following the incident in addition to his constructive discharge.  *See* SAC ¶ 48.  As a result, the Court concludes that Plaintiff has established that Sobel and

Rutella engaged in a conspiracy to discriminate against him under § 1985(3). Accordingly, the Court recommends that Plaintiff's Motions be granted with respect to this cause of action.

### 3.  Count Three – Negligent Hiring, Training and Retention

Although the Second Amended Complaint is unclear, Plaintiff appears to assert a claim for negligent hiring, training and retention against Defendants CPL and Cooper only.  *See* SAC ¶¶ 64-69.  In an abundance of caution, and to the extent Taylor asserts such a cause of action against Sobel and Rutella, the Court notes that negligent hiring and retention claims must be brought against an employer.  *See Bouchard v. New York Archdiocese*, 719 F. Supp. 2d 255, 260 (S.D.N.Y. 2010) ("In instances where . . . *an employer* cannot be held vicariously liable for its employee's torts . . . , the employer can still be held liable under theories of negligent hiring, negligent retention, and negligent supervision.") (internal quotation marks and alterations omitted) (emphasis added).  Here, Sobel and Rutella were not Taylor's employers, but rather fellow employees of CPL.  *See* SAC ¶¶ 16-17.  As such, Plaintiff's negligent hiring, training and retention claim against them fails as a matter of law.  The Court therefore recommends that Plaintiff's Motions be denied with respect to this cause of action.

### 4.  Count Four – Intentional and/or Negligent Infliction of Emotional Distress

Taylor also brings a claim for intentional infliction of emotional distress, and in the alternative, negligent infliction of emotional distress.  *See* SAC ¶¶ 70-73.  To establish a claim for intentional infliction of emotional distress, a plaintiff must show:

"'(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress.'" *Williams v. Geraci*, No. 14-cv-5742, 2020 WL 5848738, at *6 (E.D.N.Y. Sept. 30, 2020) (quoting *Rich v. Fox News Network, LLC*, 939 F.3d 112, 122 (2d Cir. 2019)).  A viable claim for negligent infliction of emotional distress can be achieved "in one of two ways:  (1) the 'bystander' theory; or (2) the 'direct duty' theory." *Lloyd v. City of New York*, 246 F. Supp. 3d 704, 730 (S.D.N.Y. 2017) (quoting *Baker v. Dorfman*, 239 F.3d 415, 421 (2d Cir. 2000)).  Under the bystander theory, a defendant is liable if his or her negligence causes a plaintiff to observe the death or serious physical injury of an immediate family member.  *See Lloyd,* 246 F. Supp. 3d at 730.  Via the direct duty theory, "a plaintiff suffers emotional distress caused by [a] defendant's breach of a duty which unreasonably endangered [the plaintiff's] own physical safety." *Id.* (citation and internal quotation marks omitted).

Both negligent and intentional infliction of emotional distress claims require a showing that the defendant's conduct is so "extreme and outrageous [. . . that it] transcends the bounds of decency so as to be regarded as atrocious and intolerable in a civilized society." *Friedman v. Self Help Cmty. Servs., Inc.*, 647 Fed. App'x. 44, 47 (2d Cir. 2016) (quoting *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 157 (2d Cir. 2014)).  Further, negligent and intentional infliction of emotional distress are "highly disfavored [torts] under New York law," and they are "to be invoked only as a last resort." *Turley*, 774 F.3d at 158 (internal citations omitted).  To that end, these causes

19

of action "may be invoked only . . . to provide relief in those circumstances where traditional theories of recovery do not." *Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015) (citations omitted).

While there is no question that the Defaulting Defendants' conduct here was extreme and outrageous, Plaintiff's emotional distress claim fails as a matter of law because recovery is available to Taylor on his § 1981 and NYSHRL claims for race discrimination and hostile work environment respectively, which address the same wrongdoing. *See Cowan v. City of Mount Vernon,* 95 F. Supp. 3d 624, 659 (S.D.N.Y. 2015) (dismissing intentional infliction of emotional distress claim where plaintiff stated discrimination claims under Title VII and NYSHRL). Accordingly, the Court recommends that Plaintiffs' Motions be denied with respect to Taylor's claim for intentional and/or negligent infliction of emotional distress.

### 5. Count Seven – SCHRL

Lastly, Plaintiff claims that Defendants violated SCHRL § 528-7, which outlaws discriminatory practices in employment. *See* SAC ¶¶ 88-91. At least one New York court has held that pursuant to Suffolk County Code § 528-13, complaints under SCHRL must be brought before the Suffolk County Human Rights Commission (the "Commission"). *See Gutterman v. State,* 74 Misc. 3d 365, 368, 161 N.Y.S.3d 692, 696 (NY Ct. Cl. 2021) (declining to exercise jurisdiction over violation of SCHRL). Such claims are investigated by the Commission and referred to an administrative law judge for a decision, and an action to enforce such decision may be brought in the New York State Supreme Court for Suffolk County. *See id.* Further, upon review of

the statute, the Court is unable to identify any provision that authorizes a private right of action in federal court or other deviation from this procedure. *See Grant v. Cnty of Suffolk,* No. 215-CV-4781, 2020 WL 2747984, at *5 (E.D.N.Y. May 27, 2020) (acknowledging that the court could not identify support for a private right of action under SCHRL); *Gerardi v. Huntington Union Free Sch. Dist.*, 124 F. Supp. 3d 206, 230 (E.D.N.Y. 2015) (dismissing SCHRL claim because the statute does not provide a private right of action). For both of these reasons, the Court recommends that Plaintiff's Motions be denied with respect to Taylor's SCHRL claim.

### B. **Damages**

The Court notes that Plaintiff did not provide proof of his damages, instead requesting that the Court "set the matter down for submission of proofs as to damages, costs and fees." Sobel Mot. at 3; Rutella Mot. at 3. In light of the above conclusions regarding liability, the Court respectfully recommends granting Plaintiff leave to submit proof of his damages with respect to his § 1981 race discrimination, NYSHRL hostile work environment and § 1985 conspiracy claims.

## IV.   CONCLUSION

For the reasons set forth above, the Court concludes that Plaintiff has established liability against Sobel and Rutella as to his § 1981 race discrimination, NYSHRL hostile work environment and § 1985 conspiracy claims. Accordingly, the Court respectfully recommends that Plaintiffs' Motions be granted with respect to those causes of action but denied with respect to all other claims, and that Taylor be granted leave to submit proof of his damages.

## V.    OBJECTIONS

A copy of this Report and Recommendation is being served on Plaintiff by electronic filing on the date below.  Plaintiff is directed to serve a copy of it on the Defaulting Defendants via first-class mail and promptly file proof of service by ECF. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen days.  *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d).  Failure to file objections within this period waives the right to appeal the District Court's Order.  *See Ferrer v. Woliver*, No. 05-cv-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).


Dated:      Central Islip, New York
            May 10, 2024

                                        /s/ Steven I. Locke
                                        STEVEN I. LOCKE
                                        United States Magistrate Judge