UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

KYRIN TAYLOR

              **DOCKET NO.: CV-22-2236**
              ***(HG)(SIL)***

        Plaintiff,

    -against-

COOPER POWER & LIGHTING CORP.,          AFFIDAVIT OF SERVICE
MITCH COOPER, DAREN SOBEL, and
AUSTIN RUTELLA,

        Defendants.
-------------------------------------------------------------X

STATE OF NEW YORK, COUNTY OF NASSAU    ss.:

      I, PRECILLA LOCKETT, say: I am not a party to the within action, I am over 18 years of age and I reside in Nassau County, New York.

      On September 27, 2024, I served the within REPORT AND RECOMMENDATION on Defendants Daren Sobel, and Austin Rutella, at the address designated by said Defendants for that purpose by depositing a true copy of same enclosed in a post-paid, properly addressed wrapper, in a post-office depository under the exclusive care and custody of the United States Postal Service within the State of New York.

Mr. Daren Sobel
4 Louis Avenue
Moriches, New York 11935

Mr. Austin Rutella
294 Cass Street
Dix Hills, New York 11746

                            *Precilla Lockett*
                            PRECILLA LOCKETT

Sworn to before me this
27th day of September, 2024

_____
NOTARY PUBLIC

Cobia Malik Powell
Notary Public, State of New York
Reg. No. 02PO6443448
Qualified in Kings County
Commission Expires 11/07/2026

THE LAW OFFICES OF
# FREDERICK K. BREWINGTON

*Attorneys and Counselors at Law*
556 Peninsula Blvd., Hempstead, New York 11550
Phone: 516-489-6959 • Fax: 516-489-6958 • www.brewingtonlaw.com

Frederick K. Brewington
Albert D. Manuel III
Cobia M. Powell

Of Counsel
Oscar Holt III
Jay D. Umans

September 27, 2024

*VIA FIRST CLASS MAIL*
Mr. Daren Sobel
4 Louis Avenue
Moriches, New York 11935

  *Re:* *Taylor v. Cooper Power & Lighting Corp.*
    *Docket No.: CV-22-2236 (HG)(SIL)*

Dear Mr. Sobel:

  With respect to the above referenced matter, enclosed, please find the *Report and Recommendations*, issued by the Honorable Judge Steven I. Locke, dated September 26, 2024.

     Sincerely,

     PRECILLA LOCKETT

Enclosures
:pl

THE LAW OFFICES OF
# FREDERICK K. BREWINGTON

*Attorneys and Counselors at Law*
556 Peninsula Blvd., Hempstead, New York 11550
Phone: 516-489-6959 • Fax: 516-489-6958 • www.brewingtonlaw.com

Frederick K. Brewington
Albert D. Manuel III
Cobia M. Powell

Of Counsel
Oscar Holt III
Jay D. Umans

September 27, 2024

***VIA FIRST CLASS MAIL***
Mr. Austin Rutella
298 Cass Street
Dix Hills, New York 11746

> *Re:*  *Taylor v. Cooper Power & Lighting Corp.*
>       *Docket No.: CV-22-2236 (HG)(SIL)*

Dear Mr. Rutella:

With respect to the above referenced matter, enclosed, please find the *Report and Recommendations*, issued by the Honorable Judge Steven I. Locke, dated September 26, 2024.

Sincerely,

PRECILLA LOCKETT

Enclosures
:pl

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x
KYRIN TAYLOR,

                                    Plaintiff,                    **REPORT AND**
                                                                 **RECOMMENDATION**
        -against-                                                22-cv-2236 (HG)(SIL)

COOPER   POWER   &   LIGHTING,   MITCH
COOPER,   DAREN   SOBEL,   and   AUSTIN
RUTELLA,

                                    Defendants.
--------------------------------------------------------------------x

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court in this employment discrimination action, on

referral from the Honorable Hector Gonzalez for Report and Recommendation, is

Plaintiff Kyrin Taylor's ("Plaintiff" or "Taylor") motion for damages pursuant to Rule

55 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") against defaulting

Defendants Daren Sobel ("Sobel") and Austin Rutella ("Rutella," or together with

Sobel, the "Defaulting Defendants").   *See* Plaintiff's Motion for Damages ("Plaintiff's

Motion" or "Pl. Mot."), Docket Entry ("DE") [56].  By way of Complaint dated April

19, 2022, modified by an Amended Complaint dated August 4, 2022, and a Second

Amended Complaint dated September 28, 2022, Plaintiff commenced this action

against Defendants Cooper Power & Lighting Corp. ("CPL"), Mitch Cooper ("Cooper")

and the Defaulting Defendants (together with CPL and Cooper, "Defendants")

alleging that they subjected Taylor to race discrimination over the course of his

employment with CPL.  *See* Complaint, DE [1]; Amended Complaint, DE [14]; Second

Amended Complaint ("SAC"), DE [23].

Following motions for default judgment against Sobel and Rutella, and a Report and Recommendation from this Court, Judge Gonzalez granted Plaintiffs' motions in part with respect to Taylor's: (1) race discrimination claim under 42 U.S.C. § 1981, (2) conspiracy claim pursuant to 42 U.S.C. § 1985; and (3) hostile work environment under N.Y. Executive Law § 296 (the "New York State Human Rights Law" or "NYSHRL"). Judge Gonzalez then permitted Plaintiff leave to submit proof of his damages. Taylor now seeks compensatory damages, consisting of $2,880,771.68 in lost wages and $500,000 for emotional distress, as well as $1,000,000 in punitive damages and $182,808.57 in attorney's fees and costs. Pl. Mot., 7.

For the reasons set forth herein, the Court respectfully recommends that Plaintiff's Motion be granted in part and denied in part and that Taylor be awarded against the Defaulting Defendants: (1) $59,629.20 in lost wages, (2) $200,000 in emotional distress damages and (3) $500,000 in punitive damages, for a total monetary award of $759,629.20. In addition, the Court recommends that Plaintiff be awarded $6,558.42 in pre-judgment interest, plus $5.23 per day until the date on which judgment is entered, as well as post judgment interest on the entire monetary award of $759,629.20, as set forth in 28 U.S.C. § 1961. The Court further recommends that Plaintiff's Motion be denied with respect to the attorney's fees and costs sought, with leave to renew upon the submission of appropriate supporting documentation.

## I.   BACKGROUND

### A. Facts

All relevant facts are taken from the Second Amended Complaint, as well as the submissions in connection with Plaintiff's Motion, and are accepted as true for

2

the purposes of the present motion. Plaintiff Taylor is an individual and a New York

resident. SAC ¶ 13. Defendant CPL is a New York corporation with a principal place

of business in Farmingdale, New York. *Id.* ¶ 14. Defendant Cooper is an individual

residing in New York and the owner of CPL. *Id.* ¶ 15. Defaulting Defendants Sobel

and Rutella are New York residents and were employees of CPL during the events at

issue. *Id.* ¶¶ 16-17.

In or around January 2021, CPL hired Taylor as an "Electrician's Helper

and/or Apprentice Electrician." *Id.* ¶ 18. Upon his hiring, Plaintiff also joined a

union, specifically the International Brotherhood of Electrical Workers Local 25. *Id.*

Taylor was employed by CPL for approximately four months. *See id.* ¶ 19. During

the events at issue, Plaintiff was the only African American person employed as an

Electrician's Helper or Apprentice Electrician at CPL. *See id.* ¶ 13. Throughout

Taylor's employment he was subject to "offensive remarks, discriminatory acts, and

differential treatment compared to his white co-workers," although he does not

specify any such instances, other than those set forth below. *Id.* ¶ 20.

In or about February 2021, Taylor was observing more experienced members

of CPL's staff in the course of their work, as was encouraged and required for

apprentice-level electricians. *Id.* ¶ 21. Sobel admonished Plaintiff for "standing there

without [his] tools doing nothing" and instructed him to move a pipe. *Id.* Taylor

responded that he did not take orders from Sobel, as he was not his supervisor. *See*

*id.* ¶ 21. In response, Sobel mocked Plaintiff and called him a "tough guy," and when

Taylor left the room Sobel told another employee identified as Anthony Doe that he

would "get his payback" and that "[n]obody disrespects [Sobel]." *Id.* ¶ 22. Plaintiff reported this incident to Cooper, who took no action in response. *Id.* ¶ 23.

Over the course of his employment, Taylor regularly worked in the "tool room" on the CPL premises. *See id.* ¶ 24. On April 20, 2021, at approximately 8:00 a.m., Plaintiff entered the tool room and saw a hangman's noose and a second partially tied noose, hanging in full view of all employees. *Id.* ¶ 25. Taylor took a photo of the nooses with his cell phone. *See id.* Plaintiff understood that the nooses were directed towards him and were intended to threaten and intimidate him. *Id.* According to Taylor, Sobel and Rutella were aware of the racial connotations of hanging a noose as a means of threatening and intimidating African American people. *See id.* ¶ 28.

Plaintiff, concerned that one or more of his co-workers intended to harm or kill him based on his race, contacted the president of his union, Kevin Casey, and his union representative, Tim McCarthy ("McCarthy"). *See id.* ¶¶ 30-31. Taylor then called the Suffolk County Police and waited outside the premises for them to arrive. *See id.* ¶¶ 36, 44. The police interviewed Plaintiff, Cooper, Sobel and Rutella upon their arrival. *See id.* ¶¶ 36-37. Sobel and Rutella admitted to constructing and hanging the nooses. *Id.* ¶ 37. After his police interview, Rutella walked towards Taylor in a menacing manner and entered Plaintiff's personal space, forcing Taylor to step back to avoid physical contact with Rutella. *See id.* ¶ 38.

Shortly thereafter, McCarthy arrived at CPL and spoke with Cooper, who informed McCarthy that Sobel and Rutella admitted to constructing and hanging the nooses and that there was a security camera in the tool room. *Id.* ¶¶ 39-40. Plaintiff

overheard Cooper tell McCarthy that, "Austin [Rutella] is going for his apprenticeship and I don't want to mess that up." *Id.* ¶ 41; Pl. Mot., Ex. E. Cooper also admitted that the nooses could not be explained as any equipment used in the course of electrical work. *See* SAC ¶¶ 42-43. Later, Cooper admonished Taylor for calling the police, rather than contacting Cooper to handle the incident first. *Id.* ¶ 44.

Plaintiff reported to work the following day, where he was assigned to work directly with Rutella. *Id.* ¶¶ 45-46. Given that Cooper had no intention of rectifying the situation, Taylor was forced to resign from his position at CPL, *see id.* ¶ 47, although the date of his resignation is not stated in the Second Amended Complaint. Plaintiff asserts that he was constructively discharged from his employment, damaging his future employment and financial prospects. *Id.* ¶ 49. Although CPL and Cooper also contested Taylor's claim for workers compensation benefits, *see id.*, Plaintiff, CPL and the New York State Insurance Fund ultimately reached a settlement of $106,000 to resolve this claim. *See* Pl. Mot., Ex. J.

Prior to his resignation from CPL, Taylor earned $805.78 per week. Pl., Mot., Ex. I. According to Plaintiff, it takes approximately ten years to become a journeyman electrician,[1] for which the average wage in New York is $32 per hour (or $67,229 per year). *See* Pl. Mot., 5 (citing *Journeyman Electrician Salary in New York*, ZipRecruiter, https://www.ziprecruiter.com/Salaries/Journeyman-Electrician-Salary--in-New-York (last accessed Sep. 23, 2024)). Taylor also asserts that it takes

---

[1] Although Taylor cites Cooper's deposition testimony for this proposition, Cooper did not testify as to the number of years required to become a journeyman electrician. *See* Pl. Mot., Ex. F, 38:15-39:23. Cooper also testified that Plaintiff was not enrolled in classes that lead to becoming a journeyman electrician at the time of his resignation. *See id.*

an additional two years to become a master electrician, with an average wage of $39 per hour. *See* Pl. Mot., 5 (citing Indeed Editorial Team, *How to Become a Master Electrician*, Indeed.com, https://www.indeed.com/career-advice/finding-a-job/how-to-become-master-electrician (last updated June 28, 2024) and *Master Electrician Salary in New York*, ZipRecruiter, https://www.ziprecruiter.com/Salaries/Master-Electrician-Salary--in-New-York (last accessed Sep. 23, 2024)). As a result, Plaintiff claims that he would be at least thirty-seven years old by the time he became a master electrician and would have at least twenty-eight years remaining in his working life. *See* Pl. Mot., 5-6. As of September 16, 2022, Taylor was twenty-four years old and living with his grandparents in Rome, New York. *See* Pl. Mot., Ex. G, 1.

Between May 13, 2021 and September 21, 2022, Plaintiff was treated and evaluated by a psychologist, Dr. Le Roy V. Monroe. *See* Pl. Mot., Exs. G. & H. In an evaluation dated July 28, 2022, Dr. Monroe opined that Taylor suffered from Race-Based Traumatic Stress ("RBTS"), as well as "moderate major depression." *See* Pl. Mot., Ex. H, 2. Dr. Monroe further noted that the incident at CPL on April 20, 2021 filled Plaintiff with "panic and anxiety" and "a deep[] concern for his personal safety." Pl. Mot., Ex. G, 1. Over the course of his treatment of Taylor, Dr. Monroe observed Plaintiff "[sink] further into the recesses of fear and a guardedness that prevented his resumption of a positive view of life." *Id.* 2. According to Dr. Monroe, when Plaintiff attempted to find employment elsewhere, "[h]e found that the old reminders of an unwelcoming environment that surrounded him was too much for him to overcome." *Id.* Taylor had trouble sleeping, suffered from nightmares, and struggled

to maintain his relationships outside of his immediate family. *See id.* Dr. Monroe concluded that based on Plaintiff's "degree of psychological distress and injury suffered," Taylor began treatment with a degree of disability of approximately 80%, which escalated to "100% as his mental state deteriorated." *Id.* Plaintiff further asserts that he is entirely unemployable as a result of his experience at CPL. *See* Pl. Mot., 5.[2] The Court notes that Taylor did not submit an affidavit or declaration in support of his claim for damages.

On May 13, 2021, Taylor filed a charge of discrimination with the New York State Division of Human Rights ("NYSDHR"), which was duly cross-filed with the Equal Employment Opportunity Commission ("EEOC"). SAC ¶ 8. The NYSDHR determined on December 3, 2021 that probable cause existed to believe that Defendants engaged in unlawful discriminatory practices toward Plaintiff. *Id.* ¶ 9. On April 22, 2022, the EEOC issued a right to sue letter concerning Taylor's charge. *See id.* ¶ 12.

### B. Procedural History

Plaintiff commenced this action against Defendants on April 19, 2022, and thereafter filed an Amended Complaint on August 4, 2022 and a Second Amended Complaint on September 28, 2022. *See* Complaint, DE [1]; Amended Complaint, DE [14]; SAC. Taylor alleged that Defendants discriminated against him on the basis of

---

[2] In support of this assertion, Plaintiff cites a decision by the New York State Workers' Compensation Board on the payment of Dr. Monroe's fees, Pl. Mot., Ex. I, as well as an unsigned schedule to a settlement agreement between Taylor, CPL and the New York State Insurance Fund with respect to Plaintiff's workers' compensation claim, Pl. Mot., Ex. J. The Court notes that neither document states that Taylor is entirely unable to work, and the latter contains an acknowledgment from Plaintiff that "he does not anticipate receiving Social Security disability benefits within the next 18 months." *Id.*

his race, asserting claims for: (1) race discrimination and retaliation pursuant to 42 U.S.C. § 1981, (2) conspiracy pursuant to 42 U.S.C. § 1985, (3) race discrimination and retaliation under Title VII, (4) hostile work environment pursuant to NYSHRL, (5) hostile work environment pursuant to the Suffolk County Human Rights Law § 528-7, (6) negligent hiring, retention and training, and (7) intentional and/or negligent infliction of emotional distress. *See* SAC.

Defendants were served with the Complaint on May 5, 2022. *See* DE [5]. On June 1, 2022, counsel appeared on behalf of CPL and Cooper and discovery commenced thereafter. *See* Notice of Appearance, DE [6]; Minute Order dated September 22, 2022, DE [19]. With leave of the Court, Taylor filed the Amended Complaint on August 4, 2022 and the Second Amended Complaint on September 28, 2022. *See* Amended Complaint, DE [14]; SAC. Rutella and Sobel were served with the Second Amended Complaint on December 10, 2022 and December 21, 2022 respectively. *See* DEs [29] – [30]. After the deadline for Rutella and Sobel to answer had expired, Plaintiff requested that the Court issue certificates of default against them, which the Clerk of Court did on January 24, 2023. *See* DEs [35] – [36].

On January 16, 2024, Taylor informed the Court that he had reached a settlement with CPL and Cooper, and Judge Gonzalez dismissed both parties from this action on January 22, 2024. *See* DEs [48] – [49]; Order Dismissing Parties dated Jan. 22, 2024. Plaintiff filed motions for default judgment against the Defaulting Defendants on January 24, 2024, which Judge Gonzalez referred to this Court for

Report and Recommendation.  *See* DEs [51] – [52]; Order Referring Motions dated Jan. 25, 2024.

On May 10, 2024, this Court issued a Report and Recommendation that Taylor's motions for default judgment be granted in part and denied in part.  *See* DE [53].  Specifically, the Court recommended that Plaintiff's motions be granted with respect to Taylor's § 1981 race discrimination claim, § 1985 conspiracy claim and NYSHRL hostile work environment claim, but denied as to all other causes of action, and that Taylor be granted leave to submit proof of his damages.  *See id.*  Judge Gonzalez adopted the Report and Recommendation in full on June 7, 2024, and Plaintiff's Motion was filed on June 28, 2024.  *See* Order Adopting Report and Recommendation dated June 7, 2024; Pl. Mot.

Plaintiff seeks compensatory damages, consisting of $2,880,771.68 in lost wages and $500,000 for emotional distress, as well as $1,000,000 in punitive damages and $182,808.57 in attorney's fees and costs.  *See* Pl. Mot., 7.  For the reasons set forth below, the Court respectfully recommends that Plaintiffs' Motion be granted in part and denied in part and that Taylor be awarded damages against the Defaulting Defendants as set forth herein.

## II.    LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 55(b), once liability is established on a motion for default judgment, "[t]he court must also determine the amount of damages, actual or statutory, that may be assessed." *Lyons P'ship, L.P. v. D & L Amusement & Entm't, Inc.*, 702 F. Supp. 2d 104, 111 (E.D.N.Y. 2010).  The court must ascertain damages

with "reasonable certainty." *Hosking v. New World Mortg., Inc.*, 570 Fed. App'x 28, 31 (2d Cir. 2014). To prove damages, the plaintiff need only show that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 159 (2d Cir. 1992). An evidentiary hearing is not required so long as there is a basis, demonstrated through detailed affidavits and other documentary evidence, for the damages awarded. *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997). Moreover, the evidence plaintiff submits must be admissible. *Burns v. Scott*, 635 F. Supp. 3d 258, 272 (S.D.N.Y. 2022), *reconsideration denied*, No. 20-CV-10518 (JGK), 2022 WL 18858909 (S.D.N.Y. Nov. 9, 2022).

## III.   DISCUSSION

Plaintiff seeks compensatory damages, consisting of $2,880,771.68 in lost wages and $500,000 for emotional distress, as well as $1,000,000 in punitive damages and $182,808.57 in attorney's fees and costs. *See* Pl. Mot., 7. For the reasons set forth below, the Court respectfully that Plaintiff's Motion be granted in part and denied in part and that Taylor be awarded against the Defaulting Defendants: (1) $59,629.20 in lost wages, (2) $200,000 in emotional distress damages and (3) $500,000 in punitive damages, for a total monetary award of $759,629.20. In addition, the Court recommends that Plaintiff be awarded $6,558.42 in pre-judgment interest, plus $5.23 per day until the date on which judgment is entered, as well as post judgment interest on the entire monetary award of $759,629.20, as set forth in 28 U.S.C. § 1961.

10

The Court further recommends that Plaintiff's Motion be denied with respect to the attorney's fees and costs sought, with leave to renew upon the submission of appropriate supporting documentation.

### A. Compensatory Damages

#### 1. Lost Wages

Plaintiff seeks $2,880,771.68 in total lost wages, representing approximately forty years of work as an apprentice electrician, then journeyman electrician and later master electrician. *See* Pl. Mot., 5-6. Specifically, Taylor asserts that he would have remained an apprentice electrician – at a wage of $805.78 per week – for approximately 10 years before becoming a journeyman electrician and is therefore owed $407,724.68 in lost wages. *Id.* Plaintiff further seeks $201,687 for three years of work as a journeyman electrician at a wage of $32 per hour. *Id.* Lastly, Taylor argues he would become a master electrician at approximately thirty-seven years old and have twenty-eight years remaining in his working life. *Id.* at 5-6. Plaintiff therefore seeks an additional $2,271,360 for twenty-eight years of work as a master electrician at a wage of $39 per hour. *Id.*

Under §§ 1981 and 1985, as well as NYSHRL, Plaintiff is entitled to compensatory damages, including for economic loss. *Tenecora v. Ba-kal Rest. Corp.*, No. CV187311, 2020 WL 8771256, at *18 (E.D.N.Y. Nov. 30, 2020). "Victims of employment discrimination are entitled to reasonable damages that would make the plaintiff 'whole for injuries suffered on account of unlawful employment discrimination.'" *Moore v. Houlihan's Rest., Inc.*, No. 07-CV-03129, 2011 WL

2470023, at *4 (E.D.N.Y. May 10, 2011) (quoting *Greenway v. Buffalo Hilton Hotel,*
143 F.3d 47, 54 (2d Cir. 1998)). Back pay is generally awarded absent special
circumstances. *See Moore,* 2011 WL 2470023, at *4. To calculate back pay, a
plaintiff's salary at the time of termination is multiplied by the length of time between
termination and trial or here, an order on default judgment. *See Gutierrez v. Taxi
Club Management, Inc.,* No. 17-CIV-532, 2018 WL 3432786, at *7 (E.D.N.Y. June 25,
2018), *report and recommendation adopted sub nom. Gutierrez v. Taxi Club Mgmt.,
Inc.,* No. 17-CV-0532, 2018 WL 3429903 (E.D.N.Y. July 16, 2018)).

An award of front pay, however, involves "calculating economic losses that will
be experienced by a plaintiff in the future, as a result of the unlawful conduct of the
defendant." *Id.* (citing *Banks v. Travlers Cos.,* 180 F.3d 358, 364 (2d Cir. 1999). Front
pay is designed "to make victims of discrimination whole, not to place the plaintiff in
a better position than he would have occupied had he not been fired." *Thomas v. iStar
Fin., Inc.,* 508 F. Supp. 2d 252, 260 (S.D.N.Y. 2007). "The Second Circuit has held
that front pay should be awarded in situations where it is unlikely that the plaintiff
will be able to find [] reasonably comparable employment in the future." *Vernon v.
Port Auth. of New York & New Jersey*, 220 F. Supp. 2d 223, 236 (S.D.N.Y. 2002). An
award of front pay may not be unduly speculative and "must consider the ability of
the plaintiff to mitigate damages in the future." *Thomas,* 508 F. Supp. 2d at 260.
"The longer a proposed front pay period, the more speculative the damages become,"
and as a result, "front pay awards typically cover a short period of time." *Pogil v.
KPMG L.L.P.,* No. 21-CV-7628 (LTS) (BCM), 2024 WL 1208909, at *12 (S.D.N.Y. Mar.

21, 2024) (internal quotation marks omitted).  While expert testimony is not required, courts often look to testimony from economists to evaluate a front pay award.  *See e.g., Pogil,* 2024 WL 1208909, at * 15 (excluding expert report regarding front pay); *Vernon v. Port Auth. of New York & New Jersey,* No. 95 CIV.4594 PKL, 2003 WL 21314049, at *2, n. 4 (S.D.N.Y. June 6, 2003).

Applying the above standards, the Court recommends that Taylor be awarded $59,629.20 in back pay from April 21, 2021 – the date of his constructive discharge – to September 21, 2022, the last date on which Plaintiff received psychological treatment.[3]  Moreover, the Court does not recommend that Plaintiff be awarded any front pay.

For one, Taylor's assertion that he will never be able to work again in any capacity is based only on the psychological evaluations of Dr. Monroe and not based on any affidavit or testimony from Plaintiff himself.   Those evaluations are themselves two years old and therefore do not reflect any recent changes in Taylor's mental status or ability to mitigate his damages through alternative employment. *See* Pl. Mot., Exs. G & H.  There is no evidence in the record demonstrating Plaintiff's level of psychological distress, mental health treatment or employment status in the intervening years.  As such, the Court lacks sufficient information to conclude that Plaintiff has not worked at all from September 21, 2022 to the present.  To award back pay beyond this date would therefore be unduly speculative.

---

[3] This figure was reached by dividing Plaintiff's weekly pay prior to termination, $805.78, by five (yielding $161.16 per workday) and multiplying the result by 370, the number of weekdays between April 21, 2021 and September 21, 2022.

Moreover, Plaintiff's calculation of forty years of total wages is also based on speculation and assumptions regarding Taylor's salary and ability to achieve certain promotions and certifications, rather than any expert testimony or other evidence. *See Pogil,* 2024 WL 1208909, at * 14 (rejecting expert report on front pay that was speculative and based on assumptions); *Quintero v. Angels of the World, Inc.,* No. 19-CV-6126, 2021 WL 4464123, at *14 (E.D.N.Y. Sept. 10, 2021), *report and recommendation adopted sub nom. Quintero v. Stoupas,* No. 19CV06126, 2021 WL 4463488 (E.D.N.Y. Sept. 29, 2021) (rejecting front pay award for lack of evidence of efforts to find comparable work); *Chisholm v. Mem'l Sloan-Kettering Cancer Ctr.,* 824 F. Supp. 2d 573, 577 (S.D.N.Y. 2011) (reducing front pay award based on undue speculation).  Plaintiff asserts – without corroboration, even from his own affidavit – that he would achieve the titles of journeyman and master electrician and therefore earn higher wages.  Accordingly, the Court declines to recommend that Plaintiff be awarded additional lost wages apart from the $59,626.98 in back pay recommended above.

2. Emotional Distress

Plaintiff also seeks $500,000 in emotional distress damages.  *See* Pl. Mot, 4-5. In this Circuit, emotional distress awards for discrimination are generally grouped into three categories of claims:  "garden variety," "significant" and "egregious." *Emamian v. Rockefeller Univ.,* No. 07-cv-3919, 2018 WL 2849700, at *16 (S.D.N.Y. June 8, 2018) (internal quotation marks and citation omitted).  In "garden variety" claims, "the evidence of mental suffering is generally limited to the testimony of the

plaintiff, who describes his or her injury in vague or conclusory terms, without relating either the severity or consequences of the injury." *Id.* (internal quotation marks and citation omitted).  Such claims generally merit awards ranging from $30,000 to $125,000.  *Id.* (citations omitted); *Ravina v. Columbia Univ.*, No. 16-cv-2137, 2019 WL 1450449, at *11 (S.D.N.Y. Mar. 31, 2019).  By contrast, "significant" emotional distress claims, which typically warrant awards between $50,000 to $200,000, are "based on more substantial harm or more offensive conduct, are sometimes supported by medical testimony and evidence, evidence of treatment by a healthcare professional and/or medication, and testimony from other, corroborating witnesses." *Emamian*, 2018 WL 2849700, at *16 (internal quotation marks and citation omitted).  Finally, "egregious" claims "generally involve either outrageous or shocking discriminatory conduct or a significant impact on the physical health of the plaintiff[,]" and such awards can exceed $200,000. *Ravina*, 2019 WL 1450449, at *12 (internal quotation marks and citation omitted).

Courts in this Circuit have authorized sizable emotional distress awards where the discrimination at issue included the display of a noose. *See e.g., Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 162-64 (2d Cir. 2014) (affirming award of $1.32 million where noose was displayed in the workplace among other instances of racial harassment); *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 673 (2d Cir. 2012) (affirming award of $1 million for pattern of harassment that included the display of a noose); *but see MacMillan v. Millennium Broadway Hotel,* 873 F. Supp. 2d 546, 561-63 (S.D.N.Y. 2012) (reducing award from $125,000 to $30,000 in case involving a

15

noose where plaintiff failed to submit evidence of mental health treatment).  In this regard, the Court recognizes that a noose "is among the most repugnant of all racist symbols, because it is itself an instrument of violence." *Williams v. New York City Housing Authority*, 154 F. Supp. 2d 820, 824 (S.D.N.Y. 2001).

Here, the Court concludes that Plaintiff's claim for emotional distress damages falls into the egregious category.  The display of a noose in the workplace of an African American employee is both outrageous and shocking, particularly in light of the historical and cultural associations with that symbol.  *See Williams,* 154 F. Supp. 2d at 824.  Taylor has also submitted evidence of his diagnosis of RBTS and depression, as well as his treatment by a psychologist for over one year following the incident. *See* Pl. Mot., Exs. G & H.  The Court nonetheless concludes that a modest reduction in the award sought is warranted.  Although the requested award of $500,000 is less than that awarded in other cases involving the display of a noose, those cases also involved a pattern of harassment over a period of time.  *See Turley,* 774 F.3d at 164; *Zeno,* 702 F.3d at 673.   In addition, the Court acknowledges that Plaintiff's application does not include an affidavit from Taylor himself detailing his emotional distress and the evidence of his mental health treatment is at least two years old.  Therefore, while the emotion distress here undoubtedly falls into the egregious category, the Court recommends that Plaintiff's requested award be reduced to $200,000.

B. **Punitive Damages**

Taylor further seeks $1,000,000 in punitive damages. A prevailing party is entitled to punitive damages under § 1981 when "an employer has engaged in intentional discrimination and has done so with malice or with reckless indifference to the federally protected rights of an aggrieved individual." *Claud v. Brown Harris Stevens of Hamptons, LLC*, 676 F. Supp. 3d 100, 142 (E.D.N.Y. 2023) (internal quotation marks omitted). Punitive damages awards under § 1981 are not subject to Title VII's statutory cap. *See Kauffman v. Maxim Healthcare Servs., Inc.*, 509 F. Supp. 2d 210, 220 (E.D.N.Y. 2007).

"A plaintiff may establish the requisite state of mind for an award of punitive damages with evidence (1) that the defendant discriminated in the face of a perceived risk that its actions violated federal law, or (2) of egregious or outrageous acts that may serve as evidence supporting an inference of the requisite evil motive." *Claud*, 676 F. Supp. 3d at 142. To evaluate the reasonableness of punitive damages, the Supreme Court has delineated several factors, including: "(1) the degree of reprehensibility of the defendant's conduct; (2) the difference between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded and the civil penalties imposed in comparable cases." *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 101 (E.D.N.Y. 2020) (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575, 116 S. Ct. 1589, 1599 (1996)). In workplace harassment cases, courts in this Circuit commonly authorize punitive damages awards of up to two times the compensatory damages

17

awarded. *See e.g., Gutierrez,* 2018 WL 3432786, at \*11 (awarding 2:1 ratio of punitive

to compensatory damages in workplace sexual harassment action); *Turley,* 774 F.3d

at 166-67 (reducing punitive damage award to twice compensatory damages in action

involving a noose in the workplace); *Munson v. Diamond*, No. 15-CV-00425, 2017 WL

4863096, at \*9 (S.D.N.Y. June 1, 2017), *report and recommendation adopted*, No. 15

CIV. 425, 2017 WL 4862789 (S.D.N.Y. Oct. 26, 2017) (awarding $30,000 in punitive

damages and $15,000 in compensatory damages in sexual harassment action).

Applying the above standards, the Court recommends that Plaintiff be

awarded $500,000 in punitive damages. This award is recommended based on the

outrageous nature of the acts at issue in this case, *i.e.,* the display of two nooses in

the workplace of an African American individual. Nor is this recommendation

excessive given that it amounts to roughly double the compensatory damages

previously awarded – approximately $250,000 – and in light of similar awards in

workplace harassment actions. *See Gutierrez,* 2018 WL 3432786, at \*11; *Turley,* 774

F.3d at 166-67; *Munson*, 2018 WL 3432786, at \*11.

C. **Attorney's Fees and Costs**

Lastly, Plaintiff seeks $182,808.57 in attorney's fees and costs. Under §§ 1981

and 1985, a prevailing plaintiff may recover reasonable attorney's fees and costs. 42

U.S.C. § 1988(b). A party seeking attorney's fees, however, must submit "sufficient

evidence to support the hours worked and the rates claimed." *Maldonado v. Srour*,

No. 13-CV-5856, 2016 WL 5864587, at \*1 (E.D.N.Y. Oct. 6, 2016). Moreover, "[t]he

moving party must support its application by providing contemporaneous time

18

records that detail for each attorney, the date, the hours expended, and the nature of the work done." *Torcivia v. Suffolk Cty.*, 437 F. Supp. 3d 239, 250-51 (E.D.N.Y. 2020) (quoting Riley v. City of New York, No. 10-CV-2513, 2015 WL 9592518, at *2 (E.D.N.Y. Dec. 31, 2015) (internal quotation marks omitted)).  Similarly, a party seeking to recover costs "bears the burden of adequately documenting and itemizing the costs requested." *Ganci v. U.S. Limousine Serv. Ltd.*, No. 10-cv-3027, 2015 WL 1529772, at *8 (E.D.N.Y. Apr. 2, 2015) (quoting *Pennacchio v. Powers*, No. 05-cv-985, 2011 WL 2945825, at *2 (E.D.N.Y. Jul. 21, 2011)).

Here, Taylor does not submit contemporaneous time records or any other evidence justifying the amount of attorney's fees or costs sought.  Accordingly, the Court respectfully recommends that Plaintiff's Motion be denied with respect to the attorney's fees and costs sought, with leave to renew upon the submission of appropriate supporting documentation.

**D. Interest**

1. Pre-judgment Interest

Although Plaintiff does not specifically seek pre-judgment interest on his compensatory damage award, in a suit to enforce a federal right, the Court has the discretion to award such interest.  *See Augustin v. Jablonsky*, 819 F. Supp. 2d 153, 178 (E.D.N.Y. 2011) (citing *Gierlinger v. Gleason*, 160 F.3d 858, 873 (2d Cir.1998)); *see Claud*, 676 F. Supp. 3d at 140 ("A § 1981 plaintiff is entitled to pre-judgment interest."); *Chisholm v. Mem'l Sloan-Kettering Cancer Ctr.*, 824 F. Supp. 2d 573, 580 (S.D.N.Y. 2011) (awarding prejudgment interest on NYSHRL claims). "In exercising

such discretion, the Court should consider: '(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court.'" *Augustin*, 819 F. Supp. 2d at 178 (quoting *Gierlinger,* 160 F.3d at 873). "To the extent the damages awarded to plaintiff represent compensation for lost wages, 'it is ordinarily an abuse of discretion not to include pre-judgment interest.'" *Quintero*, 2021 WL 4464123, at *16 (quoting *Gierlinger,* 160 F.3d at 873). By contrast, courts typically decline to include pre-judgment interest on emotional distress damages where it is not necessary to make the plaintiff whole. *See Quintero,* 2021 WL 2021 WL 4464123, at *16. In employment discrimination actions, interest accrues from the date of wrongful termination to the date of judgment. *See Claud,* 676 F. Supp. 3d at 140 (calculating interest from date of plaintiff's termination).

While courts have the discretion to determine the appropriate rate of pre-judgment interest, where, as here, "a judgment is based on violations of both federal and state law, courts in this circuit uniformly have applied a federal interest rate, most commonly based on the average rate of return on one-year Treasury bills ("T-bills") for the relevant time period." *Thomas,* 508 F. Supp. 2d at 264 (internal quotation marks omitted). Courts in this district have calculated the interest rate by averaging the rates of return on T-bills over the relevant period. *See e.g., Santiago v. Crown Heights Ctr. for Nursing & Rehab*., No. 15CV4381, 2017 WL 9482107, at *26 (E.D.N.Y. Feb. 24, 2017)*, report and recommendation adopted as modified,* No.

15CV4381, 2017 WL 4410807 (E.D.N.Y. Sept. 30, 2017); *Mohan v. La Rue Distributors, Inc.*, No. CV 06-0621, 2008 WL 4822266, at *4 (E.D.N.Y. Oct. 27, 2008).

Applying the above principals, the Court recommends that Taylor be awarded pre-judgment interest on his lost wages award of $59,629.20, based on the federal interest rate, accruing from April 21, 2021, the date of Plaintiff's constructive discharge, to the date of entry of judgment. The average rate of return on T-bills from April 21, 2021 to the present is 3.2%.[4]  Applying a 3.2% annual interest rate to $59,629.20, interest accrues at a rate of $5.23 per day. Multiplying this rate by 1,254 – the number of days between April 21, 2021 and the date of this Report and Recommendation – yields a total of $6,558.42 in pre-judgment interest. The Court therefore recommends that Plaintiff be awarded $6,558.42 in pre-judgment interest, plus $5.23 per day until the date on which judgment is entered.

### 2. Post-judgment Interest

Plaintiff is also entitled to post-judgment interest under 28 U.S.C. § 1961.  *See Cappiello v. ICD Publications, Inc.*, 720 F.3d 109, 113 (2d Cir. 2013) ("[T]he statute's language applies to '*any* money judgment in a civil case recovered in a district court.'") (quoting 28 U.S.C. § 1961) (emphasis in original). The amount upon which post-judgment interest accrues includes compensatory damages and punitive damages. *See Koch v. Greenberg*, 14 F. Supp. 3d 247, 287 (S.D.N.Y. 2014), *aff'd*, 626 F. App'x 335 (2d Cir. 2015). Accordingly, the Court recommends awarding post-judgment

---

[4] This average rate was calculated with data from the Federal Reserve. *See* Board of Governors of the Federal Reserve System (US), *Market Yield on U.S. Treasury Securities at 10-Year Constant Maturity, Quoted on an Investment Basis [DGS10]*, Federal Reserve Bank of St. Louis, https://fred.stlouisfed.org/series/DGS10#0 (last accessed Sep. 24, 2024).

interest on Taylor's total monetary damages award of $759,629.20, to be calculated based on the weekly average one-year constant maturity Treasury yield for the week preceding the date on which judgment is entered.  28 U.S.C. § 1961(a) ("[I]nterest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding.").

## IV.   CONCLUSION

For the reasons set forth above, the Court respectfully recommends that Plaintiff's Motion be granted in part and denied in part and that Taylor be awarded against the Defaulting Defendants:  (1) $59,629.20 in lost wages, (2) $200,000 in emotional distress damages and (3) $500,000 in punitive damages, for a total monetary award of $759,629.20.  In addition, the Court recommends that Plaintiff be awarded $6,558.42 in pre-judgment interest, plus $5.23 per day until the date on which judgment is entered, as well as post judgment interest on the entire monetary award of $759,629.20, as set forth in 28 U.S.C. § 1961. The Court further recommends that Plaintiff's Motion be denied with respect to the attorney's fees and costs sought, with leave to renew upon the submission of appropriate supporting documentation.

## V.   OBJECTIONS

A copy of this Report and Recommendation is being served on Plaintiff by electronic filing on the date below.  Plaintiff is directed to serve a copy of it on the Defaulting Defendants via first-class mail and promptly file proof of service by ECF. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen days. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72; Fed. R.

Civ. P. 6(a) and 6(d).  Failure to file objections within this period waives the right to

appeal the District Court's Order.  *See Ferrer v. Woliver*, No. 05-cv-3696, 2008 WL

4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir.

1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).


Dated:      Central Islip, New York
              September 26, 2024

                            /s/ Steven I. Locke
                            STEVEN I. LOCKE
                            United States Magistrate Judge

LAW OFFICES OF
FREDERICK K. BREWINGTON
556 Peninsula Boulevard
Hempstead, New York 11550

Mr. Daren Sobel
4 Louis Avenue
Moriches, New York 11935

$2.59 °
US POSTAGE
FIRST-CLASS
062S0014950485
FROM 11550

B®7753.21


LAW OFFICES OF
FREDERICK K. BREWINGTON
556 Peninsula Boulevard
Hempstead, New York 11550

Mr. Austin Rutella
298 Cass Street
Dix Hills, New York 11746



$2.59 0
US POSTAGE
FIRST-CLASS
0625001494-0485
FROM 11550

B97753 20